TRANSWAY CORPORATION, a Hawaii
Corporation, Plaintiff,

and

Public Utilities Commission, State of Hawaii, Intervening-Plaintiff Appellant,

v.

HAWAIIAN EXPRESS SERVICE, INC.,
a California Corporation,
Defendant-Appellee,

and

Mid-Pacific Forwarding Company, Inc.,
Honolulu Freight Service and Ameri-Con Pacific Freight Systems, Intervening-Defendants.

TRANSWAY CORPORATION,
Plaintiff-Appellant,

Public Utilities Commission, State of
Hawaii, Intervenor-Plaintiff,

v.

HAWAIIAN EXPRESS SERVICE, INC.,
Defendant-Appellee,

Mid-Pacific Forwarding Co., Inc., Honolulu Freight Service, Inc., and Ameri-Con
Pacific Freight Systems, Intervenor-Defendants,

Hawaii Trucking Association,
Amicus Curiae.

TRANSWAY CORPORATION, a Hawaii
Corporation, Plaintiff,

Public Utilities Commission, State of Hawaii, Intervening Plaintiff Appellant,

v.

HAWAIIAN EXPRESS SERVICE, INC.,
Defendant-Appellee,

and

Mid-Pacific Forwarding Co., Inc., et al.,
Intervening Defendants-Appellees.

Nos. 80–4379, 80–4489 and 80–4492.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1982.

Decided June 24, 1982.

Robert J. Smolenski, Smolenski & Kiang, Harry S. Y. Kim, Honolulu, Hawaii, for Transway Corp.

Lawrence Berman, New York City, for Freight Forwarders.

Daniel W. Baker, San Francisco, Cal., argued, for Hawaii Exp.; Henry H. Shigekane, Damon, Shigekane, Key & Char, Honolulu, Hawaii, on brief.

Before BROWNING, Chief Circuit Judge, and SKOPIL and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

The issue raised by this appeal is whether state regulation of transfer, collection and delivery services provided by a Hawaiian motor carrier to an interstate freight forwarder is preempted by the Interstate Commerce Act. We hold that it is and affirm the judgment of the district court.

I

Plaintiff-appellant Transway Corporation ("Transway") is a Hawaiian motor carrier that holds a certificate of public convenience and necessity from the Public Utilities Commission, State of Hawaii ("PUC") and files tariffs with the PUC. Defendant-appellee Hawaiian Express Service, Inc. ("Hawaiian Express") is an interstate freight forwarder [1] doing business in the California-Hawaii trade.

In 1971, Transway contracted to provide break-bulk and delivery service for Hawai-

---

1. Freight forwarders provide door-to-door delivery service, contracting with other carriers for line-haul shipment, and, frequently, for pick-up and delivery service. Section 402(a)(5), 49 U.S.C. § 1002(a)(5) defines a freight forwarder as any person, other than certain carriers, who "in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of ... property, and

ian Express within the City and County of Honolulu (which encompasses the entire island of Oahu). The contract provided for payment at rates below those required by the applicable tariff on file with the PUC. Transway provided service at the contract rates for several years, then filed this action against Hawaiian Express for the difference between the contract rates and the minimum tariff rates.[2] The PUC intervened as a plaintiff, asserting its jurisdiction to regulate the services provided by Transway to Hawaiian Express.

Acting on cross-motions, the district court granted summary judgment for Hawaiian Express[3] on the ground that PUC regulation of the services provided by Transway is preempted by Part IV of the Interstate Commerce Act ("Act"), 49 U.S.C. §§ 1001–1022 (1976).[4]

## II

Motor carriers are regulated by Part II of the Act, 49 U.S.C. §§ 301–327 (1976). Section 204(a)(4a) of the Act, 49 U.S.C. § 304(a)(4a) (1976), authorizes the Interstate Commerce Commission ("Commission") to exempt from the provisions of "this chapter [referring to Part II]," a class of motor carriers operating solely within a single state, if such exemption will not substantially affect uniform regulation of interstate commerce. Pursuant to that section, and in light of Hawaii's unique geo-

graphic characteristics, the Commission has granted an exemption to "all qualified motor carriers in Hawaii." *Motor Carrier Operation in the State of Hawaii (ex parte 59)*, 84 M.C.C. 5, 32 (1960). The PUC regulates exempt Hawaiian motor carriers.

Freight forwarders are regulated by Part IV of the Act, 49 U.S.C. §§ 1001–1022 (1976). Transfer, collection and delivery services within terminal areas, provided by motor carriers to freight forwarders, are also regulated by Part IV. 49 U.S.C. § 302(c)(2) (1976). Accordingly, such motor carrier services are expressly removed from coverage by Part II of the Act. *Id.*

## III

Transway and PUC argue that the § 204(a)(4a) exemption granted by the Commission to qualified Hawaiian motor carriers in *Ex parte 59* precludes Commission regulation of those carriers under any part of the Act.[5] We disagree. The contention is inconsistent with the statutory scheme, the language of *Ex parte 59*, and the policies of the Act.

Section 204(a)(4a) authorizes the Commission only to grant exemptions from the provisions of "*this* chapter" (emphasis added)—i.e. Part II. *See* 49 U.S.C. 301 (1976) ("This chapter [8] may be cited as part II of the Interstate Commerce Act."). It follows that an exemption granted pursuant to that

---

performs or provides for the performance of break-bulk and distributing operations . . . , and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for . . . any part of the transportation . . . the services of a carrier . . . subject to chapters 1, 8, or 12 of this title."

**2.** Transway asserts a state law right to recover for underpayment.

**3.** Summary judgment was granted only on Transway's claim for the difference between the contract and tariff rates. Count I of the complaint, a claim for breach of contract, remains to be determined.

**4.** The Interstate Commerce Act was revised in 1978 to eliminate awkward and obsolete terms.

Revised Interstate Commerce Act, Pub.L. No. 95–473, 92 Stat. 1337 (1978) (codified at 49 U.S.C. §§ 10101–11917). All references herein are to the prior act, which was in effect during the relevant contract years (1971–73).

**5.** Transway and the PUC implicitly concede that if the services provided by Transway to Hawaiian Express are not exempt from Commission regulation under Part IV of the Act, then PUC regulation is preempted, because inconsistent with federal law. *Baltimore Shippers & Receivers Ass'n v. Public Utilities Comm'n*, 268 F.Supp. 836, 843 (N.D.Cal.1967), aff'd, 389 U.S. 583, 88 S.Ct. 694, 19 L.Ed.2d 783 (1968).

section is not an exemption from Part IV, which is a separate chapter (chapter 13) of the Act. *See* 49 U.S.C. § 1001 (1976) ("This chapter [13] may be cited as part IV of the Interstate Commerce Act."). By the express terms of the Act, terminal area services to freight forwarders are regulated under Part IV, not Part II; thus, the § 204(a)(4a) exemption granted in *Ex parte 59* is inapplicable to Transway's terminal area services.

The language and reasoning of *Ex parte 59* support this construction of the statute. First, in citing the relevant portions of § 204(a)(4a), the Commission noted in brackets that the provision for exemption from "compliance with . . . this part" refers to Part II of the Act. 84 M.C.C. at 30. More importantly, in granting the § 204(a)(4a) exemption to Hawaiian carriers, the Commission reasoned that the exemption is justified because regulation of local Hawaiian carriers would amount to "unwarranted Federal regulation of a stub ended, essentially local, operation for no useful purpose." 84 M.C.C. at 31. That rationale is wholly inapplicable to federal regulation of terminal area services provided to interstate freight forwarders. Those services, although provided within a local area, are merely one link in an interstate freight-forwarding system, *see* 49 U.S.C. § 302(c)(2); as such, they directly affect interstate commerce, and cannot plausibly be characterized as essentially "local" and "stub ended." We are thus persuaded that the Commission in *Ex parte 59* contemplated only an exemption from Part II of the Act.

Finally, we note that in enacting Part IV Congress intended "to authorize the I.C.C. to prescribe terms and conditions allowing local Part II motor carriers to charge freight forwarders less for consolidation and distribution pickup service than the motor carriers charged the shipping public generally . . ., and thus enable freight forwarders to secure the profit margin necessary to support their assembly and break-bulk services . . . [and] to provide a coordinated nation-wide service." *Hawaiian Express Service v. Pacific Hawaiian Terminals*, 492 F.2d 865, 868 (9th Cir. 1974). Exempting Hawaiian motor carriers from Part IV of the Act would directly contravene this congressional policy; we find no evidence that the Commission intended to do so in *Ex parte 59*.

Transway's reliance on *Hawaiian Express Service v. Pacific Hawaiian Terminals*, and *IML Sea Transit v. United States*, 343 F.Supp. 32, 37–38 (N.D.Cal.), *aff'd*, 409 U.S. 1002, 93 S.Ct. 433, 34 L.Ed.2d 295 (1972) is misplaced. Both cases, in dicta, cite *Ex parte 59* broadly for the proposition that the Commission therein exempted Hawaiian motor carriers from "the Act." In each case, however, the question before the court was whether local Hawaiian carriers were covered by Part II of the Act. 492 F.2d at 867; 343 F.Supp. at 34–35. Neither court had occasion to consider whether local Hawaiian carriers providing terminal area services to freight forwarders were subject to Part IV of the Act.

Transway's reliance on *IML Freight, Inc.*, 122 M.C.C. 458 (1976) is similarly misplaced. In *IML Freight*, the Commission distinguished between carriers subject to Parts I, II or III of the Act and carriers subject to other parts of the Act. 122 M.C.C. at 468–69. In holding that Hawaiian carriers were exempt from regulation under Part II of the Act, the Commission, by implication, suggested that Hawaiian carriers may be subject to regulation under other parts of the Act.

## IV

Section 302(c)(2) applies to transfer, collection and delivery service provided "within terminal areas" to a freight forwarder. The district court applied the Commission's general rule for determining the extent of a terminal area, *see Commercial Zones and Terminal Areas*, 54 M.C.C. 21 (1952), and concluded that the entire island of Oahu is

the terminal area of Honolulu.[6] The services provided by Transway to Hawaiian Express were thus provided within a "terminal area."

Transway and the PUC contend that the Commission has primary jurisdiction to determine the extent of terminal areas, and that the district court should have given the Commission an opportunity to determine whether the unique characteristics of Hawaii warrant an exception to the general rule.

The Commission has authority to define terminal areas under § 204(a)(6), 49 U.S.C. § 304(a)(6) (1976). *See Freight Forwarders Institute v. United States,* 409 F.Supp. 693, 701–04 (N.D.Ill.1976). Since 1940, it has exercised that authority by establishing and periodically revising, through its rule-making procedures, a general rule for determining the bounds of terminal areas. *See, e.g. Commercial Zones and Terminal Areas,* 54 M.C.C. 21. In addition, the Commission has provided that "[a]ny motor carrier or any freight forwarder is at liberty at any time by petition to request, because of special circumstances, individual consideration of the limits of its terminal area . . . with a view toward establishing an exception to . . . the general rule . . . ." *Id.* at 58.

 The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R.R.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It "comes into play whenever [judicial] enforcement of the claim requires the resolution of issues which . . . have been placed within the special competence of an administrative body." *Id.* at 64, 77 S.Ct. at 165. In deciding whether to apply the doctrine in a particular case, courts should be guided by two principles: the importance of uniformity of regulation and the need for specialized knowledge. *See id.; Nader v. Allegheny Airlines,* 426 U.S. 290, 303–304, 96 S.Ct. 1978, 1986–1987, 48 L.Ed.2d 643 (1976).

We hold that no purpose would be served by invoking the doctrine of primary jurisdiction in this case. By promulgating and periodically revising a general rule, the Commission has applied its special expertise to the problem of terminal areas and has insured uniformity in the regulation of terminal area services. The district court's application of the general rule to the facts of this case was a mechanical act, requiring no special administrative expertise.

Neither Transway nor the PUC claims to have petitioned the Commission for consideration of an exception to the general rule; nor do we find anything in the record that can be construed as raising before the district court the issue of an exception to the general rule. Thus, without deciding whether referral to the Commission would have been warranted upon the filing of a petition for special consideration, we hold that the district court did not err in failing to refer *sua sponte* the terminal area question to the Commission.

The judgment of the district court is AFFIRMED.

---

**6.** The terminal area of a municipality includes all points within the "commercial zone" of a municipality (as defined in *Commercial Zones and Terminal Areas,* 46 M.C.C. 665, 699 (1946)), and not beyond the territorial limits of the motor carrier or freight forwarder.