**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 1245, Plaintiff-Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF NEVADA et al.,**
**Defendants-Appellees,**

and

**Sierra Pacific Power Company, a Nevada Corporation, Cross-Claimant, Defendant-Appellant.**

**Nos. 77–1295, 77–1343.**

United States Court of Appeals, Ninth Circuit.

Feb. 21, 1980.

208

John Madariaga, Reno, Nev., John Anderson, San Francisco, Cal., for Sierra Pacific Power Co.

Robert List, Atty. Gen., Carson City, Nev., George Keele, Deputy Atty. Gen., Public Service Commission, Carson City, Nev., for Public Service Commission of Nevada, et al.

Before CARTER,* KILKENNY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

The International Brotherhood of Electrical Workers, Local Union No. 1245 appeals from the dismissal of its suit seeking injunctive and declaratory relief with respect to an order of the Public Service Commission of Nevada which eliminated employee discounts on utility rates that the Union had obtained from Sierra Pacific Power Company (SPP). Challenging the Commission's authority to issue the order, the Un-

ion contends that the discounts were a mandatory subject of collective bargaining under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (1976) (NLRA), with the consequence that state regulation of the matter is preempted. The district court did not resolve this issue because it concluded that the Johnson Act, 28 U.S.C. § 1342 (1976), deprived it of subject matter jurisdiction over the action. Alternatively, the court ruled that abstention and dismissal were appropriate in this case under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

We hold that the district court erred in its interpretation of the Johnson Act, and although we agree that abstention is proper in this case, our conclusion is based not on *Burford* but on the rationale elaborated in *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). So guided, we hold that the district court, rather than dismissing the action, should have retained jurisdiction pending adjudication of state law issues in the Nevada court system. We therefore reverse and remand to the district court.

Our jurisdiction rests on 28 U.S.C. § 1291.

I.

FACTS

SPP is a public utility engaged in furnishing electricity, gas, and water services. The Union represents utility workers employed by SPP in its Nevada and California service areas. The Nevada Public Service Commission has regulatory authority over SPP's activities within the State of Nevada.

From 1962 until 1977, employees and retired employees of SPP received discounted utility rates pursuant to an agreement between SPP and the Union. By 1976, the value of these discounts to each employee amounted, on the average, to nearly $350 per year. However, in the course of its review of a December 1, 1975 rate increase

* Judge Carter concurred in the final disposition of this case prior to his death on November 18, 1979.

application, the Public Service Commission considered the advisability of ordering SPP to eliminate the discounts. Although SPP and the Union both contended that the Commission was without legal power to issue such an order, the Commission, by an order dated May 28, 1976, directed that the discounts be eliminated by May 1, 1977. The Commission's decision was based on its conclusion that the discounts violated Nevada law because they were "unreasonable and preferential," and that elimination of the discounts would encourage conservation of energy resources.

On August 3, 1976, the Union filed this suit, naming the Commission and SPP as defendants, and seeking preliminary and permanent injunctions to prevent discontinuance of the employee discounts as well as a declaration that the Commission lacked authority to regulate the discounts because they were a mandatory subject of collective bargaining under the NLRA. Alleging that the case arose under the Commerce and Supremacy Clauses, the complaint asserted both federal question jurisdiction and jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), which establishes federal jurisdiction over suits for violation of a contract between a union and an employer. SPP admitted most of the Union's allegations and concurred in requesting that the Commission's order be invalidated. In addition to the preemption claim advanced by the Union, SPP asserted that the Commission's order was arbitrary and capricious and a violation of the Equal Protection Clause.

The Commission answered challenging the court's jurisdiction. The district court ruled that jurisdiction of the suit was withdrawn by the Johnson Act, 28 U.S.C. § 1342 (1976), and that considerations of comity mandated abstention under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Accordingly, the district court ordered the suit dismissed. The Union and SPP have appealed.

We shall discuss first the applicability of the Johnson Act and thereafter *Burford* and *Pullman* abstention.

## II.

## JURISDICTION

The allegations of the Union and SPP make it plain that jurisdiction exists unless it has been withdrawn by the Johnson Act. The district courts under that Act are deprived of jurisdiction to enjoin or suspend orders of state agencies regulating public utility rates where, among other conditions, "jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution . . ." The district court believed that this condition was satisfied because it viewed the Union's preemption argument as a constitutional claim based on the Supremacy Clause. The Union, while acknowledging the "obvious, ultimate constitutional basis" of the preemption doctrine, contends that the preemption it asserts is a statutory claim based on the federal scheme and policy of the NLRA.

Whether preemption constitutes a constitutional or statutory issue has elicited from the Supreme Court varying responses. In *Kesler v. Department of Public Safety*, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), the Court held that for purposes of the three-judge court requirement (since repealed), a claim that a provision of a state motor vehicle code was preempted by the Bankruptcy Act presented the constitutional issue whether a proper exercise of the state's police power was ousted by a discharge in bankruptcy and required no construction of the state or federal acts. Three years later, in *Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), *Kesler* was overruled. Finding the *Kesler* rule unworkable, the Court concluded that preemption issues in which only conflicts between state law and federal statutes (or treaties) are involved should be regarded as statutory. However, conceding that this conclusion was not compelled, the Court based its holding largely on "sound policy considerations" related to the purposes of the three-judge court requirement.

*Swift & Co., supra,* 382 U.S. at 126–129, 86 S.Ct. at 266–268. More recently, in *Hagans v. Lavine,* 415 U.S. 528, 533, 534 n.5, 94 S.Ct. 1372, 1377, 39 L.Ed.2d 577 (1974), the Court did not regard *Swift & Co.* as having settled for all purposes the question of whether a conflict between state and federal law presents a statutory or constitutional issue. The context in which the issue there arose was whether the role of the Supremacy Clause in state-federal conflicts provided a basis for jurisdiction under the "secured by the Constitution" language of 28 U.S.C. § 1343(3). Although *Hagans* deferred the decision on that question, the opinion suggested that the conflict issue, "although denominated 'statutory,' is in reality a constitutional claim arising under the Supremacy Clause." *Id.* at 549, 94 S.Ct. at 1385.

A part of the difficulty these cases reflect arises, we think, because preemption cases involve both statutory and constitutional issues in varying degrees. Beyond preemption, as ordinarily understood, lie the purely constitutional cases in which a state law is invalidated under, for instance, the Commerce Clause, even though Congress has enacted no legislation in the area affected by the state law. *See, e. g., Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). Explicit preemption, on the other hand, exists in cases in which Congress by statute specifically forbids state regulation in certain areas. *See, e. g.,* Wholesome Meat Act, Title IV, section 408, 21 U.S.C. § 678 (1976) ("Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State . . . .").

Between these limiting cases arise those, such as now before us, in which a federal statute occupies a field to the extent that state regulation, though not expressly proscribed, would arguably be inconsistent with the federal scheme. In such cases, as the Supreme Court has said with reference to federal labor law preemption, it does not suffice merely to construe the federal statute by attempting to ascertain the intent of Congress. *San Diego Building Trades*

*Council v. Garmon,* 359 U.S. 236, 239, 240, 79 S.Ct. 773, 776, 3 L.Ed.2d 775 (1959). Rather, the court must determine whether the state provision interferes with the federal scheme embodied in the Constitution, realizing also that "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power . . ., [would require the court] not to find withdrawal from the States of power to regulate where the activity regulated was merely a peripheral concern of the Labor Management Relations Act." *Id.* at 243, 79 S.Ct. at 779. Thus, the preemption issue in such cases embodies statutory construction and both profound and delicate constitutional considerations.

Another source of the difficulty these cases reflect is that the purpose, for which the characterization of preemption cases may be necessary, exerts a strong influence on whether the case is deemed statutory or constitutional. To avoid the three-judge requirement, for example, the statutory characterization might have been employed more generously than one ought to expect it to be in fixing federal jurisdiction in the civil rights area. Uniform results cannot be expected.

■ Our task is to determine whether the preemption claim in this case is a constitutional challenge for the purpose of the Johnson Act which removes federal jurisdiction over constitutional challenges to state rate orders. The relevant portion of the Act reads:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where: (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; . . . 28 U.S.C. § 1342(1).

The key to the solution of the puzzle with which we are confronted is provided by the word "solely." Giving the word its normal meaning we conclude that the Act with-

draws federal jurisdiction only when it rests exclusively on "repugnance of the order to the Federal Constitution." It does not so rest in this case; 'it also rests in part upon a proper interpretation of the National Labor Relations Act and the jurisdiction therein provided as well as on general federal question jurisdiction, the jurisdictional amount having been met. 28 U.S.C. § 1331.

We find support for this view in the background of the Johnson Act. The Act, adopted in 1934, was designed to further the same policies reflected in the three-judge court requirement which had been enacted in 1910. *Alabama Public Service Commission v. Southern Railway,* 341 U.S. 341, 357, 358, 71 S.Ct. 762, 772, 95 L.Ed. 1002 (1951) (Frankfurter, J., concurring). Hence, the Supreme Court's analysis of the legislative purpose of the three-judge court provision is relevant to our construction of the Johnson Act:

> Their [the Congress'] ire was aroused by the frequent grants of injunctions against the enforcement of progressive state regulatory legislation, usually on substantive due process grounds. . .
> In contrast, a case involving an alleged incompatibility between state and federal statutes . . . involves more confining legal analysis and can hardly be thought to raise the worrisome possibilities that economic or political predilections will find their way into a judgment.

*Swift & Co.,* 382 U.S. at 127, 86 S.Ct. at 267. Therefore, although a challenge to a rate order based on preemption may be regarded as constitutional for some purposes, it provides no basis for invoking the Johnson Act to deprive the district court of jurisdiction under the circumstances of this case.

### III.

### BURFORD ABSTENTION

[3] As an alternative ground of dismissal, the district court decided that it should abstain, relying on *Burford v. Sun Oil Co., supra.* We note at the outset that abstention is not a single doctrine; several kinds of abstention exist and the disposition of a case may depend upon the kind of absten-

tion which is invoked. Here, purporting to follow the principle of *Burford v. Sun Oil Co., supra,* which permits a court to decline to adjudicate an essentially local issue arising out of a complicated state regulatory scheme, the district court dismissed the case.

This circuit has been careful to avoid extending *Burford.* In three recent cases, this court held *Burford* abstention inapplicable to cases challenging zoning regulations or land use plans. *Isthmus Landowners Association v. California,* 601 F.2d 1087 (9th Cir. 1979); *Santa Fe Land Improvement Co. v. City of Chula Vista,* 596 F.2d 838 (9th Cir. 1979); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9th Cir. 1976). Although zoning and land use schemes may be complex and are essentially local issues, we found *Burford* inapplicable in those cases for two reasons. First, the State had not chosen to concentrate such suits in any particular court, whereas in *Burford* Texas had confined challenges to orders of the regulatory commission to the district court of a single county to provide specialized and uniform adjudication. Second, we suggested that *Burford* abstention is inappropriate in cases in which federal issues easily could be separated from state law issues with respect to which the state courts might have special competence. Both of these reasons also suggest the inapplicability of *Burford* to this case. Nevada has not concentrated challenges to the Commission's regulatory orders in any particular or specialized court; such suits may arise in any state district court. Nev.Rev.Stat. 704.540(1) (1973). Moreover, federal issues in this case can easily be separated—and in the Union's complaint have been separated—from questions of state law.

In addition, we noted in *Santa Fe Land Improvement Co., supra,* 596 F.2d at 842, that federal review would not disrupt state efforts to establish a coherent zoning policy. In this case, SPP provided employee discounts for nearly fifteen years before the Commission decided to end them. It is disputed whether the Commission has applied

the same policy to other public utilities. On this record, we are not convinced that the Commission's order was issued in pursuit of an established policy or, if it was, that federal review would have the equivalent serious disruptive effects that *Burford* sought to avoid.

■ For these reasons, we hold abstention under *Burford*[1] is inappropriate under the facts of this case.

## IV.

### · PULLMAN ABSTENTION

■ Abstention may nonetheless be appropriate on some other ground. In each of our zoning and land use planning cases discussed above, even though *Burford* abstention was unwarranted, we abstained nonetheless on the grounds enunciated in *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). We believe that the same course should be followed here.

■ *Pullman* held that a federal court should abstain from exercising its jurisdiction in those cases where a doubtful issue of state or local law is presented, the resolution of which in the state courts would make decision upon the federal constitutional claim unnecessary. In *Canton v. Spokane School District # 81*, 498 F.2d 840 (9th Cir. 1974), and subsequent cases, this court has established a three-part test for applying the *Pullman* doctrine. Abstention is warranted in a case if the following requirements are satisfied:

(1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."
(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) The possibly determinative issue of state law is doubtful.

*Canton, supra*, 498 F.2d at 845; *Sederquist v. City of Tiburon*, 590 F.2d 278, 281 (9th Cir. 1978); *Isthmus Landowners, supra*, 601 F.2d at 1091.

■ With respect to the first of these requirements, we believe that a state's regulation of its public utilities is a sensitive area of social policy into which a federal court should not intrude unnecessarily. Although the Johnson Act is inapplicable, its policies evince the sensitive and local nature of utility regulation. Furthermore, the Commission's order in this case was designed to encourage conservation of energy resources, an area of social policy no less sensitive than that of land use planning.

■ The second requirement of *Canton* is also met. Under Nevada state law, the Public Service Commission must hold a hearing before exercising the authority to change rates which are unreasonable or preferential, Nev.Rev.Stat. 704.120(1) (1973); and in any matter requiring a hearing, the Commission must give notice "to all persons entitled to notice of the hearing." Nev.Rev.Stat. 704.465 (1973). The Commission held hearings with respect to this case in February and April 1976 before ordering elimination of the discounts. However, in a letter to the Commission dated May 10, 1976, John L. Anderson, counsel for the Union, asserted that "IBEW Local 1245 has received no notice or opportunity to be heard in this matter." It is possible, therefore, that the Commission's proceeding was procedurally defective. Moreover, the Union filed a statement of position with the Commission which attempted to demonstrate that "elimination of employee discounts would benefit no one and would

---

1. We may observe in passing that the advisability of *Burford* abstention is particularly questionable when the basis of the plaintiff's claim is preemption. The purpose of *Burford* abstention is to avoid federal intrusion into matters which are largely of local concern and which are within the special competence of local courts. A preemption claim alleges in essence that Congress has determined that particular matters are of national concern and should be administered by national, rather than local, institutions. If a preemption claim is well-founded, therefore, *Burford* abstention cannot be appropriate. Hence, a court cannot abstain under *Burford* in a preemption case without implicitly ruling on the merits of the action.

harm many." Should this be true, the Commission's order may be vulnerable under state law which provides that regulatory orders may be challenged and set aside if unreasonable. Nev.Rev.Stat. 704.540 (1974).[2]

Corroboration of the substantiality of these state law issues consists of a state district court's decision in *Sierra Pacific Power Co. v. Public Service Commission*, No. 36626 (Nev. 1st Dist. April 11, 1979), which invalidated the Commission's order on both state and federal grounds[3] and ordered reinstatement of the employee discounts. Because the Union is not a party to this state action, and also because the state district court's judgment is currently on appeal to the Nevada Supreme Court, the Nevada proceedings do not render the case before us moot. Nonetheless, the Nevada proceedings confirm the possibility of this case being resolved on state law grounds.

Finally, the state law issues which may be determinative are doubtful. On this record we cannot say whether the Commission's order is "unreasonable" within the meaning of Nev.Rev.Stat. 704.540. The possible procedural issues are similarly unclear. On its face, the requirement in Nev. Rev.Stat. 704.465 that the Commission give notice "to all persons entitled to notice of a hearing" is circular. We prefer, however, to leave the construction of this requirement to the Nevada state courts.

We hold that the three requirements for abstention under *Pullman* are satisfied and that neither this court nor the district court should reach the question of whether the NLRA and the Supremacy Clause prohibit the Nevada Public Service Commission from eliminating the employee discounts contained in the collective bargaining agreement between SPP and its employees until the possibly determinative state law issues are resolved. Under these circumstances dismissal is improper. Rather, the federal district court should retain jurisdiction to enable the litigant to return to adjudicate any surviving federal questions after resolution of the state law issues. *Rancho Palos Verdes Corp., supra*, 547 F.2d at 1096. On remand, therefore, the district court shall retain jurisdiction of this suit.

Reversed and Remanded.

---

**2.** The fact that the Union did not raise these or other state law issues in its complaint does not affect our determination of the abstention issue. As this court noted in *Santa Fe Land Improvement Co.*, 596 F.2d at 840, " ' "[i]t is no answer to the contention that the district court should have abstained, that appellants did not raise their state claims in their complaint. Appellants cannot be allowed to frustrate the policies underlying the doctrine of abstention by this simple expedient." ' *Muskegon Theaters, Inc. v. City of Muskegon*, 507 F.2d 199, 204 (6th Cir. 1974) (quoting *Reid v. Board of Educ.*, 453 F.2d 238, 242 n. 7 (2d Cir. 1971))."

**3.** With respect to the discounts, the court made the following conclusions of law:

C. *Employee and Retiree Discount*

1. The elimination of Sierra's employee and retiree discount by the Commission was unlawful and unreasonable in that it constituted an unreasonable interference with Sierra's management prerogatives.

2. The elimination of Sierra's employee and retiree discount by the Commission was unlawful and unreasonable in that the Commission infringed upon an area of labor/management relations preempted by the federal government.

3. The elimination of Sierra's employee and retiree discount was unlawful and unreasonable in that the Commission failed to afford Sierra, the affected employees and retirees, and the general public notice as required by chapter 704 of the Nevada Revised Statutes and the Constitutions of the United States and the State of Nevada.

4. The elimination of Sierra's employee and retiree discount was unlawful and unreasonable in that the decision to do so was not supported by substantial evidence.

5. The Opinion and Order of the Commission should be vacated and set aside as of May 24, 1976, to the extent that the Commission eliminated Sierra's employee and retiree discount and said discount should be reinstated. Sierra should be allowed to recover sufficient revenue to reinstate the employee and retiree discount and to refund to each of Sierra's employees and retirees all amounts lost as a result of the unlawful partial and total elimination of said discount. Said revenue should be generated through an appropriate adjustment to Sierra's rates.