Gary PAROLA, an individual; Monterey City Disposal Service, Inc., Plaintiffs–Appellees,

v.

Caspar WEINBERGER, as Secretary of the Department of Defense; John Lehman, as Secretary of the Department of the Army; Robert H. Shumaker, Commodore, U.S.N., Commanding Officer of the Naval Postgraduate School, Monterey, California; Major General William H. Harrison, Commander, Seventh Infantry, Fort Ord, California; United States of America, Defendants–Appellants,

v.

CITY of MONTEREY, Defendant–Appellee.

Nos. 86–2963, 86–15066 and 87–1944.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1987.

Decided June 1, 1988.

Maria A. Iizuka, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Oliver L. Holmes and Janelle M. Diller, Pettit & Martin, San Francisco, Cal., for plaintiffs-appellees.

William B. Conners, Asst. City Atty., City of Monterey, Monterey, Cal., for defendant-appellee.

Before FLETCHER and FARRIS, Circuit Judges, and QUACKENBUSH,* District Judge.

FLETCHER, Circuit Judge:

Appellee Gary Parola, owner of appellee Monterey City Disposal Service, Inc., brought this bid protest action to challenge two bid solicitations issued by the Navy and Army, respectively, for garbage collection and disposal at the Naval Postgraduate School and the Presidio of Monterey. As part of his challenge, Parola invoked the bid protest review procedures under the auspices of the General Accounting Office ("GAO"), which are established by the Competition in Contracting Act (hereinafter "CICA"), enacted as Title VII of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494. CICA's bid protest procedures, among other things, authorize the Comptroller General to stay the award of a federal contract pending GAO review. 31 U.S.C. §§ 3551–56. The federal defendants here challenge the constitutionality of these stay provisions. Because we have considered the identical issue in a companion case, *Lear Siegler v. Lehman,* 842 F.2d 1102 (9th Cir.1988), in which we upheld the constitutionality of the challenged provisions, we incorporate the analysis of that decision here by reference and affirm the judgment of the district court insofar as it upholds the constitutionality of CICA's stay provisions. For the reasons set forth below, we also affirm the balance of the district court's judgment.

### FACTS

Early in 1984, a study of the Naval Postgraduate School and the Army's Presidio facilities located within the City of Monterey estimated that a competitively awarded garbage collection contract would realize a savings of $50,000 annually. For several years prior to that time, both facilities had contracted for garbage collection with Parola, who held an exclusive garbage-collection franchise from the City of Monterey. The Navy and Army each issued bid solicitations for a new garbage collection contract in mid-April 1985. Parola submitted a bid in accordance with the rate structure imposed on his company by law as the exclusive franchisee of the City. In addition, just prior to the dates on which the sealed bids were to be opened, Parola filed a written bid protest with the GAO. The protest alleged that the bid solicitations had employed improper "business size" standards pursuant to the Small Business Administration set-aside rules, and that the

---

* Honorable Justin L. Quackenbush, United States District Judge for the Eastern District of Washington, sitting by designation.

bid solicitations also violated the Resource Conservation and Recovery Act ("RCRA") by failing to conform to the Monterey Ordinance granting Parola exclusive garbage collection rights within Monterey. Parola contacted the Army and the Navy to inquire whether they intended to abide by the stay provisions of the Competition in Contracting Act (CICA), 31 U.S.C. §§ 3551–3556, which would suspend any action on the contracts while the bid protest was pending. While the Army replied that the solicitations would be suspended indefinitely, the Navy informed Parola that the bid opening would proceed as scheduled.

Parola filed this action on May 14, 1985, the day before the Navy's bid opening was scheduled. On June 24, the district court enjoined the federal defendants from taking any action in furtherance of a contract award until the GAO had an opportunity to rule on the bid protest. On July 16, the Small Business Administration ruled on the small-business set-aside issue raised by Parola, and disqualified the low bidder on the Navy contract. The second lowest bidder had placed a bid of $129,000, compared with Parola's bid of $250,452.

The GAO issued its opinion on September 3, 1985, finding that the Army and the Navy were required to use Parola's company for garbage collection services. The basis for its finding was the provision in CICA, at 10 U.S.C. § 2304(c)(5), which creates an exception to the general rule of competitive contract awards where a statute allows or requires that the procurement be made "from a specified source." The GAO found RCRA § 6001, 42 U.S.C. 6961, to be a statute requiring the defendants to contract with a specified source. RCRA § 6001 calls upon federal agencies to comply with local solid waste disposal "requirements," and, according to the GAO, Monterey Ordinance No. 2255, which establishes that all garbage collection in the city will be performed by an exclusive franchisee, was such a requirement.

On September 12, 1986, the district court granted summary judgment to the plaintiffs, enjoining the defendants from awarding the garbage collection contract to any party other than Parola. The court followed the reasoning of the GAO, giving deference to its opinion. In a subsequent order, the court also upheld the constitutionality of the CICA stay provisions, following the Third Circuit's decision in *Ameron v. U.S. Army Corps of Engineers*, 809 F.2d 979 (3rd Cir.1986), *cert. granted*, — U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988).[1]

## DISCUSSION

We review *de novo* a grant of summary judgment, to determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). The district court's interpretations of the applicable statutes and regulations present questions of law, which we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir.1984) (en banc).

### I.

## JURISDICTION OVER PAROLA'S ADMINISTRATIVE LAW CLAIMS

■ Parola brought this action seeking declaratory and injunctive relief against the award of two government contracts. Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, provides that:

[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

§ 702 does not itself grant subject matter jurisdiction, but is rather a waiver of sovereign immunity in suits seeking judicial review of agency actions where judicial review has not been expressly authorized by statute. *See, e.g., Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation*, 792 F.2d 782, 793 (9th Cir.1986). Unless a statute expressly precludes review, however, a federal district court has jurisdiction over APA challenges to agency actions as claims "arising under" federal law pursuant to 28 U.S.C. § 1331. *E.g., Robbins v. Reagan*, 780 F.2d 37, 42–43 (D.C. Cir.1985); *see Chrysler Corp. v. Brown*, 441 U.S. 281, 317 n. 47, 99 S.Ct. 1705, n. 47, 60 L.Ed.2d 208 (1979); *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

---

1. The City of Monterey, which was initially joined in the action as a defendant, now joins plaintiffs-appellees in this appeal in arguing for the application of Parola's exclusive franchise to the defendants.

This action arises under federal procurement laws and regulations, and RCRA § 6001, 42 U.S.C. § 6961, which defendants allegedly violated in awarding the disputed contracts. Defendants cite no preclusion of review statute that would strip the district court of subject matter jurisdiction under 28 U.S.C. § 1331. On the contrary, judicial review of the legality of procurement contracts is well established. *See Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970); *Armstrong & Armstrong, Inc. v. United States,* 514 F.2d 402 (9th Cir.1975). Furthermore, "[t]here is no question that a district court may '[e]njoin the performance of a [government] contract if the award was the result of procedures not comporting with the law.'" *Choctaw Mfg. Co. v. United States,* 761 F.2d 609, 619 (11th Cir.1985) (citations omitted). Accordingly, the district court properly exercised jurisdiction in this case.

Defendants' jurisdictional challenge is completely meritless. Defendants' argument is built upon the premise that Parola brings this action under 42 U.S.C. § 6972, authorizing "citizen suits" against federal agencies in violation of RCRA requirements. Such suits require a 60-day notice to the defendant agency prior to filing suit, 42 U.S.C. § 6972(a)(1)(A), a prerequisite allegedly not performed by Parola. Although an alleged RCRA violation is at the core of Parola's claims, it is obvious that Parola has not brought a "citizen suit" within the meaning of 42 U.S.C. § 6972(a)(1)(A). The "citizen suit" provision was designed as an expansive grant of standing to private individuals to compel EPA and private party compliance with RCRA. *See, e.g., Walls v. Waste Resource Corp.,* 761 F.2d 311, 315–16 (6th Cir.1985). But Parola's *standing* to sue is based on his alleged injury from a government contract award and on the judicial review provisions of the APA. *See Scanwell, supra.* Indeed, RCRA explicitly states that the citizen suit provision "does not restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste ... or to seek any other relief ..." 42 U.S.C. § 6972(f). Thus, the RCRA citizen suit provision does not displace Parola's independent basis for suit and is irrelevant to the jurisdictional issue.

## II.

### DEFERENCE TO THE GAO DECISION

The parties raise as an issue whether the district court should have given "deference" to the GAO decision in favor of Parola's bid protest. The district court found the GAO decision "entitled to deference" though not "dispositive," and followed the GAO's analysis in holding that RCRA obliged the defendants to adhere to Parola's exclusive garbage collection franchise.

A district court may defer consideration of the merits of a bid protest until the GAO has issued its recommendation on the bid protest, under the doctrine of "primary jurisdiction." *See Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1316 (D.C.Cir.1971). The doctrine is applied to promote uniformity of regulation and to allow courts to benefit from an agency's specialized knowledge. *See Transway Corp. v. Hawaiian Express Service, Inc.,* 679 F.2d 1328, 1332 (9th Cir.1982). The GAO has been recognized as having expertise in issues of federal procurement law. *See Wheelabrator,* 455 F.2d at 1313–16. Therefore, it was appropriate for the district court to postpone its determination of the merits of Parola's bid protest until it could avail itself of the benefit of the GAO's decision.

While the GAO has considerable expertise in dealing with procurement contracts, the GAO decision was not based upon particulars of federal contract provisions or practices, nor even on particular procurement regulations. Instead, the GAO relied on statutory interpretation, a task in which courts also have some expertise. Courts are instructed to give deference to agency constructions of those statutes which the agencies themselves are charged with administering. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982). However, where agencies interpret statutes outside their administrative ken, it is not clear that their interpretations are entitled to any particular deference, because they are not "specialists" in the operation of those statutes. Assuming, arguendo, that the GAO's role in deciding procurement protests gives it a claim to deference in interpreting procurement regulations or stat-

utes like CICA, it is difficult to see how its interpretation of RCRA is entitled to deference merely because the RCRA issue was dispositive of the bid protest. Because GAO has demonstrated no special expertise in administering environmental statutes, the district court should not have accorded deference to the GAO's disposition of the RCRA issue.

## III.

### THE FEDERAL DEFENDANT'S OBLIGATION TO COMPLY WITH THE LOCAL ORDINANCE

The central issue in this case is whether the defendants are obliged to honor the City of Monterey's grant of an exclusive garbage collection franchise to plaintiffs.

The City of Monterey enacted City Ordinance No. 2255, codified at Chapter 14 of the Monterey City Code, which requires that:

[t]he occupant of each premises within the City upon which garbage, refuse, and rubbish is produced shall obtain and maintain disposal service by the City, its agents, or its franchisee, and shall be liable for and shall pay the full amount of any and all fees or charges imposed by the City, its agents, or franchisee, for such services allowed herein ...

There is no dispute that the defendants are "occupant[s] of premises within the City upon which garbage ... is produced." However, the applicability of Ordinance 2255 to the defendants raises a threshold question of the power of state and local governments to regulate federal instrumentalities. The Supreme Court has interpreted the Supremacy Clause of the Constitution as follows:

Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent that there is a "clear congressional mandate," "specific congressional action" that makes this authorization "clear and unambiguous."

*Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2012, 48 L.Ed.2d 555 (1976) (footnotes omitted). This principle obvious-

ly applies with equal force to local government regulation of federal installations and activities. *See, e.g., United States v. Town of Windsor,* 765 F.2d 16 (2d Cir.1985) (invalidating local building permit ordinances as applied to federal contractors).

Although the parties did not frame the issue in exactly this way, this court is bound to consider whether a "clear and unambiguous" congressional mandate authorizes the local regulation of federal installations implicit in Ordinance 2255. Parola argues, in effect, that such an authorization is found in RCRA § 6001.[2]

RCRA § 6001, 42 U.S.C. § 6961 requires that all federal agencies and instrumentalities:

engaged in activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate and *local requirements, both substantive and procedural* (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges.

(Emphasis added.) There can be no dispute that this provision unambiguously subjects federal instrumentalities to state and local regulation. The crux of the issue, as the defendants point out, is whether Monterey's exclusive franchise ordinance is a "local requirement ... respecting control and abatement of solid waste" under RCRA § 6001.

The district court did not fully resolve this issue. Rejecting the defendants' argument that RCRA § 6001 deals only with local regulation of waste *disposal* rather than *collection,* the district court found that the "usual meaning" of the words "control" and "abatement" is sufficiently broad to include "collection" and that the legislative history supports that conclusion. We agree with the district court on this point. "Solid waste" is defined in RCRA, 42 U.S.C. § 6903(27) as "any garbage ...including solid material...resulting

---

**2.** Parola also raises the suggestion that CICA and its applicable regulations authorize sole-source garbage collection contracts. Because

we affirm on the basis of RCRA, we do not reach that issue.

from... commercial...and from community activities." The federal installations' arrangements for garbage collection comes within the meaning of "disposal or management of solid waste" in § 6001.

However, we must also consider in what sense Ordinance 2255 is a "requirement" respecting garbage collection. While the legislative history of § 6001 does not expressly define "requirement," it does state that § 6001 "parallels" § 118 of the Clean Air Act (CAA), 42 U.S.C. § 7418, and § 313 of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1323. *See* S.Rep. No. 94–988, 94th Cong., 2d Sess. (1976) at 24. As originally enacted, CAA § 118 and FWPCA § 313 instructed federal instrumentalities to "comply with Federal, state, interstate, and local requirements." *Hancock v. Train,* 426 U.S. at 172, 96 S.Ct. at 2009; *EPA v. California ex rel State Water Resources Control Board,* 426 U.S. 200, 212, 96 S.Ct. 2022, 2028, 48 L.Ed.2d 578 (1976). In these companion cases interpreting the two sections, the Supreme Court interpreted "requirement" to refer only to substantive emissions control and water quality standards and schedules, but not to mandate federal compliance with permit requirements. *Hancock,* 426 U.S. at 187–89, 96 S.Ct. at 2016–17; *EPA v. California,* 426 U.S. at 226–27, 96 S.Ct. at 2034–35. The next year, Congress effectively overruled the Supreme Court's interpretation by amending the statutes to command that federal instrumentalities "be subject to, and comply with, all federal, state and local requirements, administrative authority, and process and sanctions respecting the control and abatement of [air/water] pollution ..." 42 U.S.C. § 7418(a); 33 U.S.C. § 1323(a). *See United States v. Commonwealth of Puerto Rico,* 721 F.2d 832, 834–35 (1st Cir.1983).

RCRA was enacted after the Supreme Court decisions in *Hancock* and *EPA v. California,* and before the amendments to CAA and FWPCA. The House of Representatives, in considering RCRA, at first proposed to address the Supreme Court's decisions by relying upon the Environmental Protection Agency to establish procedures to monitor federal compliance with state substantive standards. H.R.Rep. No. 94–1491, Part I, Sept. 9, 1976, 94th Cong., 2d Sess., at 45–51, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6238 at 6283–88. The Senate's version, requiring federal compliance with *"all ...* requirements,

both substantive and procedural," was adopted as § 6001. *See* S.Rep. No. 94–988, at 23–24, 63. However, as the House Report makes clear, the controversy surrounding federal compliance with state environmental "requirements" involved federal agencies' refusal "to acquire the state permits, to submit to required reports, conduct the required monitoring and to permit on-site inspections by state inspectors," as well as their refusal to meet substantive state standards. H.R.Rep. 94–1491, at 45, *reprinted in* 1976 U.S.Code Cong. & Admin.News at 6283.

The history of the federal compliance controversy instructs us that the meaning of "requirement" cannot, as in *Hancock* and *EPA v. California,* be limited to substantive environmental standards—effluent and emissions levels, and the like—but must also include the procedural *means* by which those standards are implemented: including permit requirements, reporting and monitoring duties, and submission to state inspections. The legislative reaction to *Hancock* and *EPA v. California* was to subject federal installations to state environmental control. *Compare Hancock,* 426 U.S. at 198–99, 96 S.Ct. at 2021–22 ("in enacting [pre-amendment § 118 of Clean Air Act] Congress ... stopped short of subjecting federal installations to state control") *with* S.Rep. No. 94–988, at 24 (under RCRA § 6001 "[a]ll federal agencies would be required to comply with *State and local controls* on solid waste ... disposal as if they were private citizens") (emphasis added).

Moreover, we find in the legislative history of RCRA a pervasive congressional concern that state and local authorities attempt to establish comprehensive systems for solid waste disposal and collection. It appears to have been contemplated that exclusive, or unitary, solid waste disposal systems could be necessary at the local level. For instance, the House Report notes that:

multiple jurisdictions within metropolitan areas often are unable to coordinate or unify their various solid waste collection or disposal systems because of obstacles which include: legal barriers, inconsistent disposal systems, inability to agree as to a single comprehensive system...and inability to provide a long-term commitment of minimum volume of municipal refuse.

1976 U.S.Code Cong. & Admin.News at 6315. While the legislative history does not address the precise issue facing us, it does persuade us that local regulations requiring use of an exclusive garbage collection franchise are RCRA "requirements" where such regulations are part of the state waste management plan.

Monterey Ordinance 2255 fits within the statutory framework that constitutes California's solid waste management plan. RCRA, 42 U.S.C. § 6943(a) requires state plans to "provide for...any combination of practices" to dispose of solid waste in an "environmentally sound" manner. The California State Plan (1981) was prepared in accordance with RCRA and approved by EPA in 1982. 47 Fed.Reg. 6834. The plan's enabling legislation authorizes local governments to determine:

> (a) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, nature, location, and extent of providing solid waste handling services.
> (b) Whether such services are to be provided by means of non-exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or, if in the opinion of its governing body, the public health, safety and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit or otherwise, either with or without competitive bidding. Such authority to provide solid waste handling services may be granted under such terms and conditions as are prescribed by the governing body of the local governmental agency by resolution or ordinance.

Cal.Gov. Code § 66757 (enacted 1980). Although the state plan expresses no preference for exclusive franchise arrangements over competitive systems, such exclusive franchises are clearly contemplated by the state plan.

■ We conclude that RCRA § 6001 requires federal installations to comply with local arrangements for solid waste collection and disposal, including exclusive garbage collection franchises.[3]

The district court's grant of summary judgment for the plaintiffs is AFFIRMED.

Judge Farris concurs in Parts I and II in their entirety and in the result of Part III.

---

**3.** Our conclusion does not conflict with this court's prior holding in *California v. Walters,* 751 F.2d 977 (9th Cir.1984) (per curiam). In *Walters,* we held that RCRA § 6001 did not waive sovereign immunity as to state criminal sanctions designed to enforce compliance with "state waste disposal standards, permits and reporting duties." *Id.* at 978. The court reasoned that the language and legislative history of § 6001 did not show a clear and unambiguous legislative intent to waive sovereign immunity. *Id.* at 979; *see also Florida Dept. of Env. Reg. v. Silvex Corp.,* 606 F.Supp. 159 (M.D.Fla.1985) (RCRA § 6001 does not waive sovereign immunity for civil damages penalty). The *Walters* holding is plainly correct in light of the plain language of RCRA § 6001 as compared with § 118 of the Clean Air Act. Section 6001 explicitly subjects federal agencies to sanctions only "as may be imposed by a court to enforce [injunctive] relief." 42 U.S.C. § 6961. In contrast, § 118, as amended in 1977, subjects federal agencies to "all ... State ... process and sanctions respecting the control and abatement of air pollution." 42 U.S.C. § 7418. In short, Congress demonstrated that it knows how to select language to waive sovereign immunity to criminal penalties and civil damages, if it so intends. We do not read *Walters* as excluding from the definition of "requirements" the "means of *implementing standards." Cf. Walters,* 751 F.2d at 978 ("Criminal sanctions, however, are not a 'requirement' of state law within the meaning of [42 U.S.C.] § 6961, but rather the means by which the standards, permits and reporting duties are enforced."). Permits and reporting duties are means of implementing environmental standards, and are clearly state "requirements." An exclusive garbage collection system is more like a permit requirement than a criminal sanction.