**CITY AND COUNTY OF SAN FRANCISCO, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. C–95–1752–VRW.**

United States District Court, N.D. California.

Jan. 22, 1996.

Louise S. Simpson, John S. Roddy, George K. Wong, City Attorney's Office, San Francisco, CA, for plaintiff San Francisco, City & County.

David J. Williamson, J. Michael Reidenbach, Pacific Gas & Electric Co., San Francisco, CA, Richard L. Meiss, San Francisco, CA, for defendant Pacific Gas & Electric Company.

## ORDER

WALKER, District Judge.

On October 1, 1994, the Presidio was transferred from the United States Department of Defense to the National Park Service ("NPS"). Prior to the transfer, the United States Department of the Army owned 80% of the electrical distribution in the Presidio, which consists of a 4kV primary electrical line and associated secondary lines. Defendant Pacific Gas and Electric ("PG & E") owned 20% of this system and was responsible for providing electric service to the Presidio under a General Services Administration ("GSA") public utilities contract.

In preparation for the Presidio transfer, in 1990 and 1991 NPS hired PG & E to assess the status of the Presidio electric system. On September 28, 1990, NPS modified PG & E's GSA contract to require a broad range of engineering studies and design work for the Presidio electric system. Under this modification, PG & E completed a "Revised Preliminary Engineering Study of the Electrical Facilities for the Presidio," which outlined in detail the changes to the existing electrical system necessary to upgrade the system facilities to PG & E's standards. On September 26, 1991, NPS again modified PG & E's GSA contract, this time to require PG & E to perform further detailed design review and to produce estimates for upgrading the electric system. Under this modification, PG & E completed a Final Engineering Study which recommended that the Presidio electric system be upgraded to 12kV.

After receiving PG & E's Final Engineering Study, NPS decided to award both the job of replacing the Presidio's electric system and the job of providing future utility services to the Presidio through competitive procurement. On July 5, 1994, NPS issued a Request for Proposals ("RFP") for replacing, servicing, owning and providing electrical services to the Presidio. The solicitation was for a ten-year contract which would call for the provision of electrical service to the Presidio and the installation of a new 12kV electric system. The RFP was for a cost reimbursement contract and provided that submissions proposing firm fixed price contracts would not be considered. The RFP also required that all bidders either obtain or be exempt from obtaining a San Francisco franchise license.

Plaintiff submitted its bid proposal to NPS on August 8, 1994. On September 29, 1994, NPS notified plaintiff that PG & E had been awarded the contract. Plaintiff protested the award to the General Accounting Office ("GAO"), claiming that the award was illegal because: (1) federal regulations prohibited the award of the contract to PG & E because PG & E had an organizational conflict of interest; (2) PG & E's bid was "inherently suspect;" (3) NPS did not fairly and impartially evaluate plaintiff's bid; (4) PG & E did not obtain a certificate of public convenience and necessity from the California Public Utilities Commission; and (5) NPS incorrectly evaluated plaintiff's energy conservation abilities. GAO dismissed the protest on February 15, 1995.

After plaintiff learned that the contract had been awarded to PG & E, it began a review of PG & E's franchises to provide gas and electric service in San Francisco. On March 2, 1995, plaintiff notified PG & E that

PG & E owed further payments to plaintiff for the use of plaintiff's streets to deliver gas and electricity to the Presidio. On April 27, 1995, plaintiff further notified PG & E that PG & E in fact had no legal authority to provide electric service to the Presidio.

Plaintiff commenced the instant action against the United States and PG & E on May 24, 1995. Plaintiff challenges the award to PG & E on the grounds that (1) PG & E does not have a franchise to distribute gas or electricity to the Presidio, (2) PG & E improperly submitted a fixed-price bid, (3) PG & E had an organizational conflict of interest concerning the RFP, and (4) NPS' cost and technical criteria were arbitrary, capricious, and an abuse of discretion. On the same day, PG & E filed an action in San Francisco Superior Court[1] seeking a declaration that it has a valid franchise to distribute power to the Presidio and that plaintiff is estopped from collecting certain franchise fees under that franchise. Whether PG & E has a franchise to deliver electricity to the Presidio is thus an issue in both the instant action and the state court action.

Now before the court is PG & E's motion to sever or, in the alternative, bifurcate the issue of the scope of PG & E's franchise from the rest of plaintiff's challenge to the NPS award. PG & E also asks the court to abstain from adjudicating the franchise issue pending the outcome of the state court action. For the reasons discussed below, the court DENIES PG & E's motion.

## I

■ The court is given jurisdiction over this action by 28 U.S.C. § 1331 and by § 10 of the Administrative Procedures Act, 5 U.S.C. § 702, which waives the sovereign immunity of the United States in suits seeking judicial review of agency actions where judicial review has not been expressly authorized by statute. See *Parola v. Weinberger*, 848 F.2d 956, 958 (9th Cir.1988). Plaintiff is asking the court to review GAO's dismissal of plaintiff's protest of NPS' award of the Presidio contract to PG & E. Such review is governed by 5 U.S.C. § 706(2)(a), which provides that the court shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law."

■ It is well established that judicial review of the legality of procurement contracts is proper. See, for example, *Parola*, 848 F.2d at 959; *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402 (9th Cir.1975). Moreover, a court may enjoin the performance of a government contract if the award was the result of procedures not comporting with the law. *Parola*, 848 F.2d at 959. Thus the court clearly has jurisdiction to review GAO's decision and to afford plaintiff the relief it has requested. The question currently before the court is whether it should stay its exercise of that jurisdiction pending the outcome of the state court action initiated by PG & E to determine its right to deliver electricity to the Presidio. For the reasons set forth below, the court concludes that it lacks the authority to stay the instant case pending the outcome of the state court action.

## II

In the instant action, plaintiff seeks, among other relief, both a declaration that PG & E lacks a San Francisco franchise license to deliver electricity to the Presidio and an injunction restraining PG & E from submitting a bid in future RFPs for delivery of electricity to the Presidio because PG & E lacks such a franchise. Similarly, the action filed in state court by PG & E seeks a declaration of PG & E's rights regarding delivery of electricity to the Presidio. There thus is substantial factual overlap between the issues currently before the court and the issues currently before the state court; and this overlap suggests that a stay of this action pending resolution of the state court action may be appropriate.

### A

Before it can make the determination whether a stay of this action pending the outcome of the state court action is appropriate, the court must first determine whether the test announced in *Brillhart v. Excess*

---

1. *Pacific Gas & Electric Company v. The City and County of San Francisco,* San Francisco Superior Court Case No. 969–837.

*Insurance Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), which applies in declaratory relief actions, or the test announced in *Colorado River Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), which applies in all other types of actions, controls the abstention inquiry in this case. This question would appear to be complicated by the fact that plaintiff has requested *both* declaratory and injunctive relief in its complaint; as plaintiff has pointed out, however, the Ninth Circuit has already untangled this potential complication. In *40235 Washington Street Corp. v. Lusardi,* 976 F.2d 587 (9th Cir.1992), the Ninth Circuit held that when a complaint seeks both declaratory relief and relief on the merits, *Colorado River,* not *Brillhart,* provides the appropriate standards for a court considering whether an action should be stayed. In order to determine whether the instant action can be stayed, then, the court must consider the factors set forth in *Colorado River,* as modified by *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### B

▪ After *Moses H. Cone,* the *Colorado River* doctrine requires the court to consider six factors when determining whether sufficiently exceptional circumstances exist to warrant abstention: (1) whether either the state or federal court has exercised jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls the decision on the merits; and (6) whether the state court can adequately protect the rights of the parties. *40235 Washington,* 976 F.2d at 588; *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47; *Moses H. Cone,* 460 U.S. at 24, 27, 103 S.Ct. at 941, 942–43.

▪ From the papers currently submitted to the court, it seems clear that the main dispute between the parties is whether PG & E has a franchise to deliver electricity to the Presidio. Given this, application of the *Colorado River/Moses Cone* test appears to warrant a stay of this action. The first, second and fourth *Colorado River* factors are of little help in determining whether a stay is appropriate, since there is no res over which to assert jurisdiction, the federal forum is no less convenient than is the state forum and the state and federal forums obtained jurisdiction over the subject matter of this case more or less simultaneously. The other three factors, however, all point strongly towards a stay of the federal action: a stay of this action would avoid the piecemeal litigation of simultaneous state and federal actions, state law controls the decisive issue in this case and, most importantly, the state court is in every bit as good a position to protect the parties' rights as is this court. Thus, *Colorado River* and *Moses Cone,* taken at face value, seem to support the conclusion that the instant case presents the paradigmatic situation in which a stay under the *Colorado River* doctrine is appropriate.

▪ Prevailing Ninth Circuit case law dramatically limits the discretion of district courts to stay actions under the *Colorado River* doctrine, however. In the Ninth Circuit, *Colorado River* is inapplicable to cases brought under exclusive federal jurisdiction. *Minucci v. Agrama,* 868 F.2d 1113, 1115 (9th Cir.1989); *Legal Economic Evaluations v. Metropolitan Life,* 39 F.3d 951, 956 (9th Cir. 1994). Indeed, "the district court has no discretion to stay proceedings as to claims within exclusive federal jurisdiction under the [*Colorado River*] exception." *Minucci,* 868 F.2d at 1115. Plaintiff has brought its action for review of the NPS' and GAO's decision under the Administrative Procedures Act, 5 U.S.C. § 701 et seq., which creates exclusive jurisdiction in the federal courts to review decision of federal agencies. Thus, the court has no discretion to stay its review of the award of the Presidio contract to PG & E.[2]

---

2. This is true even though resolution of the currently pending state court action may moot the instant action, a situation which was not present in *Minucci* itself. In *Intel v. Advanced Micro Devices,* 12 F.3d 908 (9th Cir.1993), the Ninth Circuit held that *Colorado River* abstention is appropriate only when the district court has "full confidence" that the resolution of a concurrent state court action will moot the federal action; if the state court action will moot the federal action only if one of many possible resolutions are reached by the state court, a federal court may

The court notes, respectfully, that it is unable to discern the basis for or utility of the *Minucci* rule. The court has been unable to locate in *Colorado River* or *Moses Cone* either language or policy concerns which would require the conclusion that federal courts must *always* proceed with dispatch to dispose of cases brought under exclusive federal jurisdiction, no matter the degree to which such "exclusively" federal cases may overlap with ongoing state proceedings. Exclusive federal jurisdiction, after all, is not a terribly rare phenomenon, and the per se *Minucci* rule seems likely to mandate federal proceedings in a large number of cases in which state court proceedings are likely to clarify or even obviate the need for ultimate federal review. See, for example, *Legal Economic Evaluations v. Metropolitan Life Insurance Co.*, 39 F.3d 951 (9th Cir.1994) (holding that *Minucci* precludes stay of an action brought under the exclusive jurisdiction of the Clayton Act, even though state court action involved issues identical to those in the federal action).

Moreover, the tight restriction on district court discretion under *Colorado River* worked by the *Minucci* rule seems likely further to formalize the law regarding district court discretion to stay actions and, accordingly, to force district courts to base their decisions regarding abstention on a senselessly formalistic and mechanical analysis in which district court discretion is controlled not by the equities of a case but rather by whether that case, based on factors which only partially reflect the broad range of concerns which should appropriately govern the exercise of discretion in such situations, can be made to fit into a certain legal pigeonhole.

■■■ A prime example of this pigeonholing is the rigid doctrinal division which exists between *Colorado River* abstention and abstention under other doctrines. For example, under the doctrine first announced in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), federal courts are required to abstain from deciding cases raising constitutional challenges to state laws in which three circumstances are present: (1) the complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open; (2) a definitive ruling on the state issue would terminate the controversy and (3) the potentially determinative issue of state law is not clear. • *Ripplinger v. Collins*, 868 F.2d 1043 (9th Cir.1989). In such cases, comity requires federal courts to afford state courts an opportunity to construe an allegedly unconstitutional law in such a way as to avoid a constitutional challenge to its validity in federal court. See, for example, *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir.1984), cert. denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) ("*Pullman* allows postponement of the exercise of federal jurisdiction when a federal constitutional issue * * * might be mooted or presented in a different posture by a state court determination of pertinent state law."). Similarly, under the doctrine first announced in *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), federal courts may decline to exercise jurisdiction over cases which involve "an essentially local issue arising out of a complicated state regulatory scheme." *International Brotherhood of Electrical Workers, Local Union No. 1245 v. Public Service Commission*, 614 F.2d 206, 211 (9th Cir.1980). "In an effort to limit the application of abstention under the *Burford* principle," *Tucker v. First Maryland Savings & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir.1991), the Ninth Circuit requires the following factors to be present in order for *Burford* to be invoked: (1) the state must concentrate suits involving the local issue in a particular court, (2) the federal issues must not be easily separable from the complex state law issues with which the state courts have special competence and (3) the federal review must be likely to disrupt state efforts to establish a coherent policy. *Id.*

One of the major issues in the present controversy is whether PG & E has a valid franchise to deliver electricity to the Presi-

---

not stay the case before it. Since plaintiff has raised a number of challenges to the decisions of the NPS and the GAO which have nothing to do with the franchise issue, the currently pending state court action would moot the instant action only if the state court held that *PG & E's* franchise to deliver electricity was invalid. *Intel* thus makes *Minucci* applicable to this action.

dio. The validity of such a franchise is precisely the sort of "essentially local issue arising out of a complicated state regulatory scheme," *Int'l B'hood of Electrical Workers, Local 1245,* 614 F.2d at 211, which the *Burford* rule in particular was designed to keep in the state courts. It is clear, however, that given the narrow constructions which both the *Pullman* and the *Burford* doctrines have themselves been given, those doctrines are not directly applicable to this case. See, for example, *Cedar Shake & Shingle Bureau v. City of Los Angeles,* 997 F.2d 620, 622 (9th Cir.1993) ("The *Pullman* abstention doctrine is a narrow exception to the district court's duty to decide cases properly before it. * * * A district court has no discretion to abstain where the abstention requirements are not met"); *Hotel Employees and Restaurant Employees Int'l Union v. Nevada Gaming Commission,* 984 F.2d 1507, 1512 (9th Cir.1993) ("*Burford* and *Pullman* abstentions are generally inappropriate when the case concerns preemption."); *Garamendi v. Allstate Insurance Co.,* 47 F.3d 350, 355–56 (9th Cir.1995) ("the power of federal courts to abstain from exercising their jurisdiction, at least in *Burford* abstention cases, is founded upon a discretion they possess only in equitable cases. * * * a district court may not abstain under *Burford* when the plaintiff seeks only legal relief."); *Kirkbride v. Continental Casualty Co.,* 933 F.2d 729, 733 (9th Cir.1991) ("*Burford,* however, does not require abstention * * * in all cases where there is a potential for conflict with state regulatory law or policy. * * * The fact that California has not established a specialized court system to resolve disputes over insurance policy coverage convinces us that application of the *Burford* doctrine to this case is unwarranted."). Thus, even absent the *Minucci* rule, the court would not have been able to stay this case under either the *Pullman* or *Burford* doctrines.

If the *Minucci* rule did not foreclose the court from exercising its discretion under *Colorado River,* however, the very close resemblance between this case and the cases contemplated by the *Burford* and *Pullman* doctrines would certainly provide guidance to the court when determining the outcome of the *Colorado River* balance and, indeed, would likely have tipped that balance in favor of staying this action pending the outcome of the state court litigation. Compare *Continental Casualty Co. v. Robsac Industries,* 947 F.2d 1367 (9th Cir.1991) (applying *Brillhart* doctrine and noting that "Although this case does not involve *Burford* abstention * * * it is worth noting that the *Burford* abstention doctrine's concern with protecting complex state administrative processes from undue federal influence * * * is also implicated here, where California has established a complex scheme of insurance regulation."). Despite the considerable similarities between this case and the cases provided for by the *Pullman* and *Burford* doctrines, however, the per se *Minucci* rule prevents the court from even considering whether its discretion to stay this action should be exercised. This creates a needless either/or aspect to the abstention inquiry; either the case fits the exact situations encountered in *Pullman* and *Burford,* in which abstention is not only advisable but mandatory, or the case does not, in which case the court may not even consider abstaining. The concerns of maintaining comity between the federal and state systems and of preserving scarce judicial resources by avoiding repetitious or unnecessary litigation are not so narrow as to support such a rigid doctrinal approach to the abstention question.

Indeed, the Supreme Court itself has cautioned against the type of pigeonholing analysis furthered by the *Minucci* rule. When discussing the manner in which the *Colorado River* factors are to be applied, it noted that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balance of the important factors as they apply in a given case, with the balance weighted heavily in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses Cone,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765. By divesting courts of all discretion in cases brought under exclusive federal jurisdiction, *Minucci* seems to mandate precisely the type of mechanical analysis decried by the Supreme Court in the above passage. Nor is the ritualistic *Minucci* rule necessitated by the

need to give life to the Supreme Court's repeated observation that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. This concern is reflected in *Moses Cone*'s observation that a court applying the *Colorado River* test must heavily weight those factors in favor of the exercise of jurisdiction; it does not require the complete obliteration of the *Colorado River* test in a certain class of cases that is accomplished by application of the *Minucci* rule.

It should be clear enough from the above that the court feels that the *Minucci* rule reflects an exaggerated view of the need for federal court adjudications in cases brought under exclusive federal jurisdiction which nonetheless contain substantial questions of state law and substantial overlap with contemporaneous state proceedings in which those state law questions are being adjudicated. The result compelled by the *Minucci* rule seems particularly inappropriate in this case, since all of the parties have indicated that they would not be prejudiced by a stay of the federal action. Nevertheless, the duty of the court is to apply settled law, and the *Minucci* rule is settled law. The court therefore concludes that it lacks discretion to stay its review under the APA of the NPS' and GAO's decision to award the Presidio contract to PG & E.

### III

■ Having concluded that it lacks discretion to stay the entire action, the court must now consider whether it should grant PG & E's request to bifurcate the franchise issue and stay resolution of only that issue. The court concludes that such a bifurcation and stay is unnecessary in this case; although the franchise dispute is the *practical* center of the controversy between the parties in this case, the resolution of that dispute is likely to be irrelevant to the court's review of the NPS' and GAO's decision.

As was noted above, it is clear that the court has jurisdiction to consider plaintiff's challenge to the NPS' and GAO's decision to award the Presidio electricity contract to PG & E. What is less clear, however, is the

exact level of deference which the court will ultimately be required to give this decision. In *Parola v. Weinberger*, 848 F.2d 956 (9th Cir.1988), the case in which the Ninth Circuit recognized the standing of unsuccessful bidders to bring challenges to procurement decisions, the Ninth Circuit recognized that "[t]he GAO has been recognized as having expertise in issues of federal procurement law" and that it was therefore appropriate for a district court to stay its review of a procurement decision pending GAO review of the same decision. Id. at 959. The Ninth Circuit also noted that while the GAO may be entitled to deference in its interpretation of the federal procurement statutes under the *Chevron* doctrine, it was not entitled to such deference in its interpretation of RCRA. Id. at 959–60. What the Ninth Circuit failed to address is the question now before the court: what standard of review must a court reviewing a GAO-approved procurement decision employ, and what level of deference is owed to factual determinations made by the GAO during its review of a procurement decision? The court declines to rule on this issue until the parties have had an opportunity to present their positions on the proper standard of review in this case.

■ While the *standard* of review to be employed by the court is not yet clear, the *scope* of that review is clear.[3] Judicial review of an agency decision is usually limited to the administrative record. 5 U.S.C. § 706(2)(d); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam); *First Nat'l Bank & Trust, Wibaux, Montana v. Department of Treasury*, 63 F.3d 894, 897 (9th Cir.1995). There are exceptions to this general rule, however. When the administrative record so fails to explain agency action that judicial review of that action is effectively frustrated, the court may "obtain from the agency, either through affidavits or testimony, such additional reasons for the agency decision as may prove necessary." *Camp*, 411 U.S. at 143, 93 S.Ct. at 1244. Similarly, the court may inquire outside of the administrative record "when it appears the agency has relied on documents

---

3. The scope of judicial review refers to the evidence the reviewing court will examine in reviewing the agency decision, while the standard of review refers to how the reviewing court will

examine that evidence. *First Nat'l Bank & Trust, Wibaux, Montana v. Department of Treasury*, 63 F.3d 894, 897 n. 5 (9th Cir.1995).

or materials not included in the record." Id. Finally, additional discovery may be permitted if supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action. Id.

None of the above exceptions appear to apply in this case; the court's review of the NPS' and GAO's decision will therefore be limited to the administrative record created by those agencies. Plaintiff admits that the validity of PG & E's franchise to deliver electricity to the Presidio was not questioned before either the NPS or the GAO; it follows that the franchise question is not a part of the administrative record, and accordingly is beyond the scope of the court's review. The APA does not empower the court to conduct a de novo review of the procurement decision in this case, but rather grants the court the much more limited authority to overturn that decision if it appears to have been made arbitrarily or capriciously. Because the validity of PG & E's franchise was never questioned before either the NPS or the GAO, the court simply cannot conclude that the decisions of those agencies were arbitrary or capricious because they failed to take this alleged invalidity into account when awarding the Presidio contract, *even if* the state court eventually determines that PG & E's franchise is invalid. The validity of PG & E's franchise is simply not a factor which the court may consider when conducting its review of the NPS' and GAO's decision.

### IV

Because the validity of PG & E's franchise is not a factor which the court properly may consider when reviewing the agency actions challenged in this case, it is unnecessary to grant PG & E's request to bifurcate the issue of that validity and stay its adjudication. The court therefore DENIES PG & E's motion.

A case management conference is scheduled for Friday, February 2, 1996, at 9:00 a.m.

IT IS SO ORDERED.