SIERRA CLUB and Colorado
Environmental Coalition,
Plaintiffs,

v.

Manuel LUJAN, Secretary of the Interior;
the United States Department of the
Interior; C. Dale Duvall, Commissioner
of Reclamation; and the United States
Bureau of Reclamation, Defendants.

Civ. A. No. 89–B–76.

United States District Court,
D. Colorado.

Jan. 19, 1990.

Adam Babich, Cornwell & Blakey, Denver, Colo., for plaintiffs.

Margaret Kane Harrington, Environmental Defense Section, U.S. Dept. of Justice, Washington, D.C., William G. Pharo, Asst. U.S. Atty., Denver, Colo., for defendants.

MEMORANDUM OPINION
AND ORDER

BABCOCK, District Judge.

Plaintiffs, Sierra Club and Colorado Environmental Coalition, seek mandatory and declaratory injunctive relief and civil penalties against the United States Department of the Interior (DOI) and the DOI's Bureau of Reclamation (BOR), jointly and severally, pursuant to Clean Water Act (CWA), section 505, 33 U.S.C. § 1365. Plaintiffs allege in their second amended complaint that DOI and BOR (United States or federal defendants) violated and continue to violate a 1975 National Pollutant Discharge Elimination System (National System) permit issued by the United States Environmental Protection Agency (EPA) to the BOR for its Leadville Mine Drainage Tunnel (tunnel). Pursuant to Fed.R.Civ.P. 12(b)(1), federal defendants move to dismiss plaintiffs' claim for civil penalties on the grounds that this Court lacks subject matter jurisdiction to impose civil penalties against the United States. Plaintiffs have moved for partial summary judgment on the issue. The sole question is whether

Congress has waived the United States' sovereign immunity and authorized the assessment of civil penalties against federal agencies for violations of the CWA, 33 U.S.C. § 1251 *et seq.* The issue has been well-briefed by both parties, several States have filed an amicus brief, and oral argument will not assist me in deciding this question. For the following reasons, I deny the federal defendants' motion to dismiss and I grant plaintiffs' motion for partial summary judgment.

The CWA was enacted in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The act's purpose is to secure compliance with new standards and to change existing practices, not merely to compensate for injuries caused by existing practices. In order to achieve these goals, CWA § 301(a) makes discharge of any pollutant into navigable waters unlawful unless authorized in accordance with specified sections of the CWA. *Id.*

One of these specified sections is section 402, which establishes the National System. Pursuant to section 402(a), the EPA Administrator may issue permits authorizing the discharge of pollutants. Upon EPA's approval, CWA § 402(b) allows a state to administer its own permit program. 33 U.S.C. § 1342(b).

Once a National System permit is issued, the permittee's obligation to comply with the regulatory scheme is determined by reference to the terms and conditions of the permit, whether the permit has been issued by the EPA or an EPA approved agency. CWA, § 402(k); 33 U.S.C. § 1342(k).

Plaintiffs allege in their complaint that the DOI and BOR own and operate a tunnel in Lake County, Colorado. Plaintiffs contend that in 1975 EPA issued BOR a National System permit which required BOR to ensure that drainage from the tunnel complied with specific effluent limitations and to submit to EPA a schedule for compliance. The permit was reissued by EPA several times. EPA also issued to BOR its December 1977 Administrative Order establishing a schedule for meeting the 1975 permit effluent limitations. In September 1984, EPA and BOR also entered into an Administrative Stipulation and Agreement that contained a schedule for plugging the tunnel.

Plaintiffs allege that BOR and DOI are in violation of their 1975 National System permit because they have failed to comply with certain permit requirements. In their claim for relief, plaintiffs ask that this Court: 1) issue a mandatory injunction enjoining further permit violations; 2) issue an Order requiring federal defendants to pay civil penalties; and 3) declare that federal defendants are in violation of the CWA. Federal defendants move to dismiss the claim for civil penalties for want of subject matter jurisdiction, arguing that the CWA's waiver of sovereign immunity is not broad enough to permit suits that seek civil penalties against the United States.

■ It is axiomatic that the United States may not be sued without its consent. *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). There is no waiver of sovereign immunity unless it is clear and unequivocal. *Army & Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 734, 102 S.Ct. 2118, 2122, 72 L.Ed.2d 520 (1982); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980). Waiver cannot be implied. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). Waivers of sovereign immunity are strictly construed in favor of the sovereign and are not expanded beyond what the language of the statute requires. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983).

■ Section 313(a) of the CWA, 33 U.S.C. § 1323(a) (Section 313) provides in pertinent part that:

Each department, agency or instrumentality ... of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity

resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, *shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution* in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.... *No officer, agent, or employee of the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and the United States shall be liable only for those civil penalties arising under Federal law or imposed by State or local court to enforce an order or the process of such court.*

33 U.S.C. § 1323(a) (emphasis added).

Section 313, therefore, waives sovereign immunity with respect to "requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution." Federal defendants contend, however, that because § 313 does not expressly consent to suits for "civil penalties," the subsection's waiver of sovereign immunity cannot be construed to extend to civil penalties. Specifically, defendants assert that civil penalties are neither "requirements" nor "sanctions."

Courts are divided on whether civil penalties are included in the term "requirements." *See, e.g., Maine v. Dept. of Navy,* 702 F.Supp. 322, 327 (D.Me.1988) ("Both

generically and specifically, such civil penalties are clearly encompassed within the [Resource Recovery and Conservation Act of 1976 (RCRA), 42 U.S.C. § 6961] language 'all ... requirements, both substantive and procedural.' "); *McClellan Ecological Seepage Situation (MESS) v. Weinberger,* 655 F.Supp. 601, 604 (E.D.Ca.1986) (neither § 6001 of the RCRA nor § 313 of the CWA provides for a waiver of sovereign immunity for civil penalties); *U.S. v. Washington,* 872 F.2d 874, 880 (9th Cir. 1989) (the word "requirements" in § 6001 of the RCRA does not clearly and unambiguously express Congress' intent to waive sovereign immunity regarding the imposition of a civil penalty). Nevertheless, civil penalties clearly are "sanctions" within the meaning of the CWA. *Metropolitan Sanitary Dist. v. Dept. of Navy,* 722 F.Supp. 1565, 1570 (N.D.Ill.1989); *See Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *U.S. v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980); *See also Adamo Wrecking Co. v. U.S.,* 434 U.S. 275, 282, 98 S.Ct. 566, 571, 54 L.Ed.2d 538 (1978) (referring to the Clean Air Act's criminal fines and civil penalties as sanctions).

The term "sanction" is defined as, "... [T]hat part of a law which is designed to secure enforcement by imposing a penalty for its violation...." Black's Law Dictionary 1203 (Rev. 5th Ed.1979). *See also* Ballentine's Law Dictionary 1137 (3d Ed. 1969) (sanctions are the "imposition of any form of penalty or fine"). Moreover, the United States Department of Justice has commonly used the word "sanction" to include civil penalties. In its comments submitted to the House of Representatives during its consideration of the RCRA, the Justice Department stated:

> This is in response to your request for the views of the Department of Justice on the issue of *criminal and civil penalties* in environmental laws, with specific reference to H.R. 14496, the [RCRA] of 1976.
>
> The Department of Justice favors the inclusion of both *civil and criminal*

*sanctions* for the most effective enforcement of environmental laws. It has been the experience of the Department with the Clean Air Act, ... the Federal Water Pollution Control Act Amendments of 1972, ... the 1899 Rivers and Harbors Act, ... and other environmental statutes that *both sanctions* are useful in different situations.

H.R.Rep. No. 1491, 94th Cong., 2d Sess. 83, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6238, 6321 (emphasis added).

Similarly, the EPA Administrator, in submitting to Congress comments regarding the enforcement provisions of the 1972 Clean Water Act Amendments, stated:

Enforcement *sanctions*, including criminal and *civil penalties*, should be available in order to make the Administrator's emergency powers meaningful.

Statement of William D. Ruckelshaus, H.R. Rep. 911, 92d Cong., 2d Sess. 161, *reprinted in* 1 Library of Congress, Sen. Comm. on Public Works, 93d Cong., 1st Sess., *A Legislative History of the Water Pollution Control Amendments of 1972* (Comm. Print 1973) at 848 (emphasis added).

CWA § 313 also contains a limitation on the Act's waiver of sovereign immunity. The limitation provides that:

No officer, agent, or employee of the United States shall be *personally* liable for any *civil penalty* arising from the performance of his official duties, ... and the United States *shall be liable* only for those *civil penalties* arising under Federal law *or* imposed by a State or local court to enforce an order or process of such court.

33 U.S.C. § 1323(a) (emphasis added). There would be no need for Congress to limit federal employees' personal liability for any civil penalties or the federal government's liability for penalties "arising under Federal law," if it had not already broadly waived immunity from all "requirements" and "sanctions," including civil penalties. *See Metropolitan Sanitary Dist. v. Dept. of Navy,* 722 F.Supp. at 1569–70; *Maine v. Dept. of Navy,* 702 F.Supp. at 329; *California v. Dept. of Navy,* 631 F.Supp. 584, 587 (N.D.Cal.1986), *aff'd,* 845

F.2d 222 (9th Cir.1988); *Ohio v. Dept. of Energy,* 689 F.Supp. 760, 766–67 (S.D.Ohio 1988).

Federal defendants further argue, however, that the limitation contained in CWA § 313 "clarifies ... that the United States is liable only for civil penalties imposed to enforce an order or process of a court." In support of their argument, they cite *McClellan Ecological Seepage Situation (MESS) v. Weinberger,* 655 F.Supp. 601 (E.D.Ca.1986). In concluding that CWA § 313 does not waive the United States' immunity from suit for civil penalties the *MESS* court relied largely upon its analysis of similar language in § 6001 of the RCRA. The waiver of sovereign immunity there provides that:

Each department, agency, and instrumentality of ... the Federal government ... *shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief)* ... in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. *Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief.*

42 U.S.C. § 6961 (emphasis added).

The wording of the RCRA differs from the CWA and a conclusion that the former does not permit civil penalties should not be applied automatically to the latter statute. The only clear reference to waiver of sovereign immunity in RCRA § 6001 applies to court-ordered sanctions for a violation of an injunction. *U.S. v. Washington,* 872 F.2d 874, 877 (9th Cir.1989); *Parola v. Weinberger,* 848 F.2d 956, 962 n. 3 (9th Cir.1988). In contrast, CWA § 313 waives sovereign immunity as to "all process and sanctions." *Metropolitan Sanitary Dist.*

*v. Dept. of Navy,* 722 F.Supp. 1565, 1569–70 n. 3 (N.D.Ill.1989).

I hold that by CWA § 313, Congress clearly and unambiguously waived the United States' sovereign immunity for civil penalties, "arising [as here] under Federal Law."

Because CWA § 313 communicates clear congressional intent to waive sovereign immunity and render the federal defendants liable for civil penalties, resort to legislative history is unnecessary. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384–85, 47 L.Ed.2d 668 (1976). Nevertheless, the legislative history supports my conclusion that Congress intended § 313 to waive sovereign immunity regarding the imposition of civil penalties.

In 1977, Congress amended the CWA, the Clean Air Act and the Safe Drinking Water Act in response to the Supreme Court's decisions in *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) and *EPA v. California,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976). These cases held that the Clean Air Act and the Federal Water Pollution Control Act did not clearly and unambiguously demonstrate congressional intent to subject federal facilities to state permit requirements. In so holding, the Court specifically distinguished substantive requirements of state law respecting control and abatement of pollution from procedural requirements employed to enforce those substantive requirements. *Hancock, supra* at 183, 96 S.Ct. at 2014–15; *EPA v. California, supra* 426 U.S. at 215, 96 S.Ct. at 1391–92.

The following year, Congress rewrote the three pollution statutes. The 1977 Amendments, which share similar wording, were Congress' reaction to the Supreme Court's prior restrictive interpretations of the term "requirements" and its holding that states were powerless to enforce their pollution laws against federal facilities. Congress specified that federal facilities must comply with *all* requirements regarding pollution control. Congress also added a clarifying sentence, now the second sentence of § 313, explaining that "all" requirements includes substantive, procedur-

al, "and any other requirement, whatsoever." In addition, the 1977 Amendments expressly subject federal facilities not only to state administrative authority but also to state process and state sanctions. The clarifying sentence in § 313 adds that the statute applies to "any" process and sanction. With the third sentence in the amended version of § 313, Congress reiterated that no claim of any immunity, including sovereign immunity, should interfere with the application of pollution laws to federal facilities.

In the legislative history to the CWA Amendments of 1977, the Senate Environment and Public Works Committee wrote that the amended version of § 313 "indicate[s] unequivocally that all Federal facilities and activities are subject to all of the provisions of State and local pollution laws." S.Rep. No. 95–370, 95th Cong., 1st Sess. 67, *reprinted in* 1977 U.S.Code Cong. & Admin.News, 4326, 4392. Although the Senate Committee did not expressly mention civil penalties, I conclude that such sanctions are included in the Committee's emphatic statement that federal facilities are subject to "all of the provisions" of state and local pollution regulations.

Moreover, the legislative history of the Clean Air Act indicates that Congress intended to waive federal agencies' immunity for civil penalties. In describing the section of House Bill 6161, which is now codified as the Clean Air Act's general sovereign immunity waiver, 42 U.S.C. § 7418, the House stated:

The amendment is also intended to resolve any question about the sanctions to which noncomplying Federal agencies, facilities, officers, employees, or agents may be subject. The applicable sanctions are to be the same for Federal facilities and personnel as for privately owned pollution sources and for the owners or operators thereof. This means that Federal facilities and agencies may be subject to injunctive relief (and criminal or civil contempt citations to enforce any such injunction), to civil or criminal penalties, and to delayed compliance penalties.

H.R.Rep. No. 294, 95th Cong., 1st Sess. 200 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin.News at 1077, 1279. The sovereign immunity waiver of House Bill 6161 was adopted by conference committee and subsequently enacted, with minor changes, into law. *See* Conf.Rep. No. 564, 95th Cong., 1st Sess. 137 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin.News 1502, 1518.

Finally, section 505(a) of the CWA, the "citizen suit" provision, permits citizens to sue any person, including the United States, in federal district court to enforce the CWA. 33 U.S.C. § 1365(a). Section 505(a) provides in pertinent part:

> Except as provided in subsection (b) of this section, any citizen may commence a civil action on his behalf—
>
> (1) against any person (including (i) the United States ...) who is alleged to be in violation of (A) an effluent standard or limitation under this Act ... The district courts shall have jurisdiction ... to enforce such an effluent standard or limitation ... and to apply any appropriate civil penalties under section 309(d) of this Act.

33 U.S.C. § 1365(a). Thus, citizens may sue any defendant who is alleged to be in violation of an effluent standard or limitation or an EPA or state issued order regarding such a standard or limitation. *Id.* The term "effluent standard or limitation" includes National System permits issued under CWA § 402. CWA § 505(f); 33 U.S.C. § 1365(f). If the citizen prevails in such an action, the court may order injunctive relief and impose civil penalties payable to the United States Treasury. 33 U.S.C. § 1365(a).

■ Nevertheless, federal defendants argue that federal facilities are not subject to civil penalties under CWA § 309, and therefore, CWA § 505 does not vest this court with jurisdiction to assess civil penalties against the United States. Defendants argue that because CWA § 309(d), 33 U.S.C. § 1319(d) provides that civil penalties are only available against "persons," and the definition of person set forth at CWA § 502(5), 33 U.S.C. § 1362(5) excludes the

United States, the assessment of civil penalties against them would not be "appropriate." Defendants' argument is without merit.

Under § 505(a), federal defendants are included as "persons" against whom penalties may be assessed. Congress' use of the word "appropriate" does not detract from its obvious intent to subject federal defendants to civil penalties. Rather, the word "appropriate" refers to the court's discretion in deciding whether a violation should be penalized and how large the penalty should be. *See Stoddard v. Western Carolina Regional Sewer Authority*, 784 F.2d 1200, 1208 (4th Cir.1986). Hence, in authorizing citizen suits under § 505(a), Congress expressly provided for § 309(d) civil penalties. *California v. Dept. of Navy*, 845 F.2d 222, 224 (9th Cir.1988).

The clear, plain, and unambiguous language of CWA §§ 313 and 505 reveals that Congress expressly determined that federal agencies shall be liable for civil penalties arising under federal law. Moreover, the legislative history of the CWA is entirely consistent with my decision that federal facilities are subject to civil penalties. Accordingly, IT IS

ORDERED that federal defendants' motion to dismiss plaintiffs' complaint for lack of jurisdiction is DENIED.

It is FURTHER ORDERED that plaintiffs' motion for summary judgment is GRANTED.