**UNITED STATES of America, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL RESOURCES, Defendant.**

**Civ. A. No. 1:CV–89–1526.**

United States District Court, M.D. Pennsylvania.

Dec. 2, 1991.

Martin C. Carlson, Asst. U.S. Atty., Harrisburg, Pa., David C. Petrone, Dept. of the Navy, Naval Facilities Engineering Command, Northern Div., Philadelphia, Pa., Carl S. Chronister and Kim Lantz Yoder, Navy Ship Parts Control Center, Mechanicsburg, Pa., Nancy Dougherty–Glazier, Office of Gen. Counsel, Litigation Office, Dept. of the Navy, Thomas R. Bartman, Land & Natural Resources Div., Environmental Defense Section, U.S. Dept. of Justice, Barry M. Hartman, John Copeland Nagle, U.S. Dept. of Justice, Environ. & Natural Resources Div., Environmental Defense Section, Washington, D.C., for plaintiff.

David H. Wersan, Harrisburg, Pa., for defendant.

**MEMORANDUM**

CALDWELL, District Judge.

I. *Introduction.*

On October 23, 1989, plaintiff, The United States of America, filed this action for declaratory and injunctive relief against defendant, The Pennsylvania Department of Environmental Resources (DER), seeking a ruling on the ground of sovereign immunity that the DER could not exercise jurisdiction over a contaminated drainageway located at a federal facility, the Navy Ships Parts Control Center (Navy Control Center), in Mechanicsburg, Pennsylvania.

By an unpublished memorandum and order, dated February 22, 1990, we dismissed the complaint, declining to exercise our discretion to entertain the declaratory judgment action while an enforcement proceeding in which the United States could have raised the sovereign immunity defense was pending in the state courts. Holding that we had abused our discretion, the Third Circuit reversed. *See United States v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 923 F.2d 1071 (3d Cir.1991).

On remand, the United States and the DER have filed cross-motions for summary judgment on the sovereign immunity issue. The plaintiff's motion also deals with another claim set forth in the complaint— whether the DER's administrative order concerning the drainageway was arbitrary and capricious under Pennsylvania law.

II. *Background.*

The parties agree upon the following facts which we take from the statement of material facts the United States submitted in support of its motion. The drainageway or ditch is about a mile and a half long and eighty feet wide. It flows into Silver Spring Run, also known as Trindle Spring Run, and carries storm water run off from the Navy Control Center. Besides the Navy Control Center, other entities contribute to pollution in the drainageway. In August of 1988, the DER tested soils and sediments in the ditch where it is located on federal property and found, along with cer-

tain metals, polychlorinated biphenyls (PCBs), in certain portions of the drainage-way.

On August 24, 1988, the DER issued an order under state law directing the Navy Control Center to assess the contamination within a certain period of time and to establish a schedule of cleanup within a certain time thereafter. On March 6, 1989, it issued an amended order to the same effect. The amended order cited as its authority over a federal facility the waivers of sovereign immunity in three federal environmental statutes, the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6961, the Clean Water Act (CWA), 33 U.S.C. § 1323(a), and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9620(a)(4). As authority for ordering the cleanup under state law, it cited the following sections of the Pennsylvania Clean Streams Law (CSL), 35 P.S. §§ 691.3 (Purdon 1977), 691.-301 (Purdon 1977), 691.307 (Purdon Supp. 1991–92), and 691.401 (Purdon 1977). It also relied upon the following sections of the Pennsylvania Solid Waste Management Act (SWMA), 35 P.S. §§ 6018.301, 6018.302, 6018.501 and 6018.601 (Purdon Pamphlet 1991–92). The amended order declared that it was "issued pursuant to laws of the Commonwealth of Pennsylvania concerning removal and remedial actions and control and abatement of solid waste and water pollution." (appendix 1 to defendant's motion, ¶ U).

### III. Discussion.

■ Preliminarily, the United States points out that a waiver of sovereign immunity must be express and must be strictly construed in the government's favor. *See Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). We will evaluate the waiver provisions of the three federal statutes under this standard. We will also bear in mind, however, that waiver need not be accomplished by "a ritualistic formula" and we must also look to underlying congressional policy. *See Franchise Tax Board v. United States*

*Postal Service*, 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446, 454 (1984).

### A. CERCLA Waiver.

42 U.S.C.A. § 9620(a)(4) provides as follows:

> State laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities owned or operated by a department, agency, or instrumentality of the United States when such facilities are not included on the National Priorities List. The preceding sentence shall not apply to the extent a State law would apply any standard or requirement to such facilities which is more stringent than the standards and requirements applicable to facilities which are not owned or operated by any such department, agency, or instrumentality.

■ As we read the plaintiff's argument, it concedes that this section waives sovereign immunity for "[s]tate laws concerning removal and remedial action" and hence that a state could proceed against the federal government under an appropriate state environmental law.[1] But the United States asserts that the phrase "removal and remedial action" must be understood in a technical sense. In that light, section 9620(a)(4) waives sovereign immunity only for state laws that are, in the words of the United States, "mini-CERCLAs," and which would require specific, predetermined standards for the cleanup of waste. In contrast, the plaintiff would characterize the state laws under which the DER is proceeding here, the CSL and SWMA, as "general environmental laws," not mini-CERCLAs, because they permit ad hoc judgments about the cleanup of a site and the standards to be applied. Hence, The United States argues that, while it may have waived sovereign immunity as to certain state laws, it has not waived its immunity to the state laws at issue in the instant case.

---

1. There is no dispute here that the Navy Control Center is not on the National Priorities List.

To buttress this argument the plaintiff cites section 9621(d)(2)(A)(ii) which it says is an example of the application of state general environmental laws to a remedial action taken under section 9621. Subsection (d)(2)(A)(ii) provides, in part, that remedial actions under section 9621 shall comply with "any promulgated standard, requirement, criteria, or limitation under a State environmental or facility siting law that is more stringent than any Federal standard, requirement, criteria, or limitation...." In the plaintiff's view, Congress could have used similar language for the waiver in section 9620(a)(4), but instead referred only to "state laws concerning removal and remedial actions."

Plaintiff argues that this is consistent with Congress's intent in CERCLA to provide a comprehensive cleanup of waste sites. Application of the CSL and SWMA would be inconsistent with that goal because the plaintiff views these state laws as each being limited to only one kind of pollution, stream pollution or solid waste, as the case may be. Plaintiff further argues that they are unlike CERCLA in that they lack specific predetermined standards for the evaluation of the plaintiff's conduct. In an apparent contradiction, the United States also argues that only state laws, like those mentioned in section 9621(d)(2)(A)(ii), are sufficient to satisfy the waiver in section 9620(a)(4).

Defendant counters that the United States is reading the phrase "removal and remedial action" much too narrowly. DER refers us to the CERCLA definitions of "remove," "removal," and "remedial action." As defendant points out, these definitions are very broad and do not support the notion that state laws concerned with removal and remedial actions must set forth specific predetermined standards for a waiver to be sufficient. Thus, 42 U.S.C. § 9601(23) provides, in pertinent part:

The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access....

42 U.S.C. § 9601(24) provides, in pertinent part:

The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement ... cleanup of released hazardous substances or contaminated materials ... and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment....

DER also points out that 42 U.S.C. § 9601(24) includes "enforcement activities" within the meaning of removal and remedial action. Defendant thus argues that, although the CSL and SWMA do not specifically provide in so many words for "removal" or "remedial" actions, these statutes do in substance provide for these actions because they confer authority on the DER to require polluters to assess and clean up contamination at sites within the Commonwealth. Hence, the United States has waived its immunity to these laws by the language of section 9620(a)(4). The DER cites in its support *Commonwealth, Department of Environmental Resources v. United States Small Business Administration*, 134 Pa.Commw. 468, 579 A.2d 1001 (1990) (en banc). Defendant also re-

lies on some dictum in *Colorado v. United States Department of the Army*, 707 F.Supp. 1562, 1569 (D.Colo.1989) ("In fact, CERCLA § 120(a)(4), [42 U.S.C. § 9620(a)(4) ], preserves state enforcement actions at federal facilities that are not listed on the National Priorities List.").

We agree with the defendant. Congress chose to use the phrase "[s]tate laws concerning removal and remedial action" and must have known that "removal" and "remedial action" had precise, albeit broad, definitions in CERCLA. Given these definitions, we cannot say that Congress really meant only state laws containing predetermined, objective, and precise standards for judging when violations have occurred under state law. *See United States Small Business Administration, supra.* The language of section 9620(a)(4) is sufficiently specific to waive the sovereign immunity of the United States to state laws like the CSL and SWMA that deal with removal and remedial actions as defined in CERCLA.

The plaintiff's argument turns the correct analysis on its head. If Congress had intended to waive immunity only as to state laws establishing specific predetermined standards, as plaintiff has argued, it would have included language to that effect in section 9620(a)(4). Instead, it did the opposite, using terms which were specifically given a broad meaning in CERCLA itself. Since it did use such broadly defined terms, contrary to plaintiff's argument, it must have intended to waive immunity to more than laws containing specific standards or limitations.

The argument is also contradictory. The very same section which is cited as an example of "general environmental laws" which Congress could have provided a waiver for but supposedly did not—section 9621(d)(2)(A)(ii)—is also cited as an example of state laws containing specific standards which were not included in the waiver of immunity in section 9620(a)(4).

We conclude that CERCLA section 9620(a)(4) waives the sovereign immunity of the United States from suit under the CSL and SWMA.

### B. CWA and RCRA Waivers.

■ We will examine the waiver provisions of these two statutes together since their substantive provisions are similar and the United States makes similar arguments concerning their scope. The CWA provides, in pertinent part, as follows:

Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner....

33 U.S.C.A. § 1323(a).

The RCRA provides, in pertinent part, as follows:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any

requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of any such injunctive relief. . . .

42 U.S.C.A. § 6961.

As the plaintiff argued above in connection with the CERCLA waiver, it contends that the term "requirements" in these waivers refers only to "objectively quantifiable effluent limitations [or] standards of the kind mandated by" the CWA and RCRA. (plaintiff's brief in support of summary judgment at p. 26) (brackets added). As direct support for this proposition, plaintiff cites *McClellan Ecological Seepage Situation v. Weinberger*, 707 F.Supp. 1182 (E.D.Cal.1988); *Kelley v. United States*, 618 F.Supp. 1103 (W.D.Mich.1985) and *New York v. United States*, 620 F.Supp. 374 (E.D.N.Y.1985), all of which interpreted the CWA waiver in accord with the plaintiff's position. Plaintiff has also relied upon *Florida Department of Environmental Regulation v. Silvex Corp.*, 606 F.Supp. 159 (M.D.Fla.1985), which analyzed the RCRA waiver in the same fashion. Indirect support is provided by *Romero–Barcelo v. Brown*, 643 F.2d 835 (1st Cir.1981), *rev'd on other grounds sub nom., Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982), which discussed similar environmental provisions. Finally, plaintiff contends that *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) and *EPA v. California ex rel. State Water Resources Control Board*, 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976) support its position that "requirements" in these waivers refers to specific predetermined standards. In the plaintiff's view, since

the CSL and SWMA do not have these requirements, but rather depend upon general language outlawing nuisances, *see* 35 P.S. § 691.3 and 35 P.S. § 6018.601, or proscribing harm to the environment in similarly general terms, the CWA and RCRA waivers do not apply here.

In opposition, defendant has cited *United States Small Business Administration, supra, Sierra Club v. Lujan*, 728 F.Supp. 1513 (D.Colo.1990), *aff'd*, 931 F.2d 1421 (10th Cir.1991), *petition for cert. filed*, 60 U.S.L.W. 3108 (U.S. July 29, 1991) (No. 91–169); *Maine v. Department of the Navy*, 702 F.Supp. 322 (D.Me.1988), and *Metropolitan Sanitary District v. United States Department of the Navy*, 722 F.Supp. 1565 (N.D.Ill.1989), all of which interpreted "requirements" in a far broader way.

We respectfully disagree with the reasoning of the courts in *Romero–Barcelo, McClellan Ecological Seepage Situation, New York v. United States*, and *Silvex Corp.* They all rely upon *Hancock* and *State Water Resources Control Board* without giving proper due to the statutory amendments to certain waiver provisions that followed in the wake of these two Supreme Court decisions.

It must be noted initially that *Hancock* and *State Water Resources Control Board* involved a materially different issue from the one in the case at bar. They both dealt with whether federal facilities had to obtain a permit from state authorities under a state plan approved by the EPA implementing federal environmental laws, in *Hancock* the Clean Air Act and in *State Water Resources Control Board* the CWA. The Supreme Court noted that a permit requirement could completely shut down a federal facility at the behest of a state and therefore looked for waivers in clear and convincing language before allowing such a result.

It did not find that language in the waiver provisions then in force. The Clean Air Act at that time spoke only of federal compliance with "State . . . requirements . . . respecting control and abatement of air pollution. . . ." *Hancock*, 426 U.S. at 172,

96 S.Ct. at 2009, 48 L.Ed.2d at 561. The Supreme Court pointedly noted that the statute did not say that there had to be compliance with *all* requirements. It also reviewed the legislative history and concluded that "requirements" was being used to refer to emission standards and compliance schedules. It thus made a distinction between substantive requirements and procedural requirements, the latter including enforcement provisions. It concluded that the waiver language applied only to substantive provisions and hence federal facilities did not have to obtain permits from state authorities. The Court conducted a similar analysis for the CWA waiver provision then in force which also simply compelled federal compliance with "State ... requirements respecting control and abatement of pollution...." *State Water Resources Control Board,* 426 U.S. at 212, 96 S.Ct. at 2028, 48 L.Ed.2d at 586.

The RCRA waiver provision and the 1977 amendment to the CWA answered the Supreme Court's concern with the previous waiver language. Both of the current waiver provisions compel compliance with "all" state requirements and both clarify that the waiver includes substantive and procedural requirements as well as permits. The CWA waiver further includes "any other requirement, whatsoever" and "the exercise of any ... State ... administrative authority." We concur with the general discussion of the scope of these waiver provisions in *Maine v. Department of the Navy,* 702 F.Supp. 322 (D.Me.1988) and *Ohio v. United States Department of Energy,* 904 F.2d 1058 (6th Cir.1990), *aff'g,* 689 F.Supp. 760 (S.D.Ohio 1988), *cert. granted,* —— U.S. ——, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991), although we need not reach the specific issues addressed in those cases, whether the United States has waived immunity to civil penalties under the RCRA or the CWA.

We would also agree with the defendant's position that, in any event, the CSL and SWMA meet the plaintiff's strict definition of "requirements" because both statutes prohibit the discharge of pollutants without a permit. *See* 35 P.S. § 691.307; 35 P.S. § 6018.301. Thus, the United States was on notice of a predetermined standard by which its conduct could be evaluated—it was not permitted to discharge any waste. In regard to this issue, we reject the plaintiff's position that the DER has admitted that no permit was required in this case.

C. The DER's Order as Arbitrary and Capricious.

■ The United States also contends that the DER's order, as issued and amended, was arbitrary and capricious under Pennsylvania law because it provided too short a time for both assessing and cleaning up the contamination and in requiring the total cleanup of the PCBs. The DER responds that the issue of time schedules has been essentially mooted by subsequent events such as the DER's acceptance of the plaintiff's schedule. It also asserts that it does have the authority under Pennsylvania law to order the complete cleanup of carcinogens like PCBs and that there is nothing arbitrary about the order requiring that.

Based upon the DER's response we cannot conclude that the United States is entitled to summary judgment on this question.